920 F.2d 205
 135 L.R.R.M. (BNA) 3216, 117 Lab.Cas. P 10,443
 CONNORS, Joseph P., Sr., Pierce, Donald E., Jr., Miller,
William, Jordan, William B., Dean, Paul R., as Trustees of
the United Mine Workers of America 1950 Pension Trust, 1950
Benefit Plan and Trust, 1974 Pension Trust and the 1974
Benefit Plan and Trust, Appellants in No. 89-1960,
v.
BETH ENERGY MINES, INC. f/t/a Bethlehem Mines Corporation
and f/t/a Beth-Elkhorn Corporation.
CONNORS, Joseph P., Sr., Pierce, Donald E., Jr., Miller,
William, Jordan, William B., Dean, Paul R., as Trustees of
the United Mine Workers of America 1950 Pension Trust, 1950
Benefit Plan and Trust, 1974 Pension Trust and the 1974
Benefit Plan and Trust,
v.
BETH ENERGY MINES, INC. f/t/a Bethlehem Mines Corporation
and f/t/a Beth-Elkhorn Corporation, Appellants in
 No. 89-1961.
 Nos. 89-1960, 89-1961.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 13, 1990.
Decided Dec. 6, 1990.
 
 Abraham C. Reich (argued), Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., David W. Allen, Margaret M. Topps, Kenneth M. Johnson, United Mine Workers of America, Health and Retirement Funds, Office of General Counsel, Washington, D.C., for appellants/cross-appellees.
 J. Anthony Messina, Raymond A. Kresge (argued), Laura M. Stein, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees/cross-appellants.
 Before MANSMANN, GREENBERG and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this contract matter we are asked to resolve a dispute which requires interpretation of the National Bituminous Coal Wage Agreements of 1981 and 1984. Specifically, we must determine whether the employer, Beth Energy Mines, Inc. ("Beth Energy") and its predecessors are obligated, under the terms of the Agreements, to credit the Trustees of the United Mine Workers Pension Trust of 1950 and 1974 and Benefit Plan and Trust of 1950 and 1974 ("the Trustees" and "the Funds") with contributions for lunch periods worked by Beth Energy employees. Because we find that the district court correctly concluded that resolution of this dispute is controlled by our decision in Connors v. Consolidation Coal Co., 866 F.2d 599 (3d Cir.1989), we will affirm the district court's grant of summary judgment mandating contributions to the Funds. We also find that the district court correctly determined that certain of the Trustees' claims are time-barred, and will, therefore, affirm the district court's entry of partial summary judgment in favor of Beth Energy, limiting the Trustees' recovery to those contributions due after March 11, 1984. Finally, we find no error in and will affirm the district court's calculation of interest and damages.
 
 I.
 
 2
 The historical facts are straightforward. On March 11, 1987, the Trustees of four collectively bargained employee benefit trust funds filed suit against Beth Energy under the Labor-Management Relations Act and the Employee Retirement Income Security Act in the United States District Court for the Eastern District of Pennsylvania.[1] The Trustees alleged that Beth Energy and its predecessors had failed to make required contributions to the Funds for a period beginning in November, 1983. Specifically, the Trustees alleged that Beth Energy had violated the terms of the National Bituminous Coal Wage Agreements of 1981 and 1984 ("the Wage Agreements") in failing to make contributions to the Funds for "worked lunch hours." The Trustees contended that in addition to making contributions based upon a normal eight-hour workday, Beth Energy was required to make contributions to the Funds, on a cents per hour basis, for each 30 minute period worked by a miner in lieu of his regular, contractually mandated lunch break.[2] The miner receives premium pay (1 1/2 times the normal hourly rate) for working through the lunch period.
 
 
 3
 In November, 1983, Beth Energy modified its method of accounting for worked lunch hours by moving them from an accounting category, "Hours 1," to which the contribution obligation applied, to another category, "Hours 4," for which it was not required to make contributions.[3] The Trustees contended that this change in the method of accounting for worked lunch hours was first discovered by them in February or March, 1985, after the Funds audited the books of a Beth Energy predecessor, Beth Elkhorn Corporation.[4] The Trustees objected to this change, arguing that Beth Energy's revised accounting for worked lunch hours and the concommitant cessation of contributions to the Funds based upon these hours, violated the terms of the Wage Agreements. Relying primarily upon the same agreements, Beth Energy denied that it had any obligation to contribute to the Funds as a result of worked lunch hours.
 
 
 4
 In January, 1988, the parties filed cross-motions for summary judgment. On October 14, 1988, the district court determined that it would delay ruling on these motions pending our potentially dispositive decision in Consolidation Coal. Consolidation Coal, which involved the identical Funds and Wage Agreements, required that we determine whether another signatory to the Wage Agreements, Consolidation Coal, was required to make contributions to the Funds for worked lunch hours.
 
 
 5
 In our January 24, 1989 decision in Consolidation Coal, we held that the employer was obligated to make contributions to the Funds based on worked lunch hours. On March 13, 1989, the district court granted summary judgment in favor of the Trustees in the case now before us; finding Consolidation Coal to be controlling, the district court ruled that Beth Energy was required to base its contributions to the Funds, in part, on worked lunch hours.
 
 
 6
 Having concluded that contributions were required, the district court gave separate consideration to a motion for partial summary judgment filed by Beth Energy on the issue of limitations. In that motion, Beth Energy contended that all claims for worked lunch hour contributions arising prior to March 11, 1984 were barred by the applicable three-year statute of limitations. The court rejected the Trustees' claim that the limitations period was subject to equitable tolling and granted Beth Energy's motion.
 
 
 7
 In setting the total amount of contributions owed to the Funds, the district court denied Beth Energy's motion to reduce the award by an amount equal to the interest and liquidated damages which had continued to mount in the days pending our decision in Consolidation Coal and during an extension of time for discovery.
 
 
 8
 The final order was entered on October 10, 1989, and these cross appeals followed. Beth Energy appeals the determination that it is liable to the Funds for worked lunch hours and challenges the district court's calculation of interest and liquidated damages. The Trustees appeal the district court's refusal to apply the doctrine of equitable tolling in order to stay the applicable statute of limitations.
 
 II.
 
 9
 Our resolution of the issues raised on appeal requires that we look first to the district court's determination that Beth Energy was, in fact, required to make contributions to the Funds on the basis of lunch hours worked. Our review of the grant of summary judgment on this issue is plenary. Goodman v. Mead Johnson and Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 
 10
 In concluding that the terms of the Wage Agreements required that Beth Energy contribute to the Funds for worked lunch hours, the district court relied primarily on our decision in Consolidation Coal. There we were called upon by the same Funds, referencing the same Wage Agreements, to decide the same issue as that presented here. We concluded there that Consolidated Coal, another signatory to the Agreement, was required to "make contributions to the employee benefit trust fund for 'worked lunch hours'." 866 F.2d at 600. Despite the fact that this matter involves a different signatory, we find that the district court's reliance upon Consolidation Coal was well-placed and that much of the reasoning of Consolidation Coal is applicable in this litigation.
 
 
 11
 Here, as it was in Consolidation Coal, our first point of reference in determining how the parties intended to treat worked lunch hours for purposes of contributions to the Funds must be the Agreements themselves. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001 (3d Cir.1980). Both parties rely on Articles IV and XX of the 1984 Agreement in support of their worked lunch hours position.
 
 
 12
 Article IV(b)(1) defines the concept of "work day" within the meaning of the Wage Agreement:
 
 
 13
 For all inside Employees, a work day of eight (8) hours from portal-to-portal which means collar to collar or bank-to-bank is established including a staggered thirty (30) minutes for lunch, and without any intermission or suspension of operation throughout the day. For inside day workers these eight (8) hours per day and forty (40) hours per week shall be paid for at time and one-half.
 
 
 14
 App. at 67a.
 
 
 15
 Article XX of the 1984 Agreement is also relevant as it creates and defines the employer's obligation to make contributions to the Funds on the basis of hours worked. Section (d)(1)(vii) of this Article provides, in pertinent part:
 
 
 16
 [H]ours of work for purposes of Employer contributions to the plans and trusts described in this Article shall include all hours worked, or fractions thereof, by Employees in a classified job covered by this Agreement. Hours actually worked for which a premium pay of any type is provided shall be treated for purposes of Employer contributions to the Trusts as though worked on a straight time basis.
 
 
 17
 App. at 77a.
 
 
 18
 Construing these provisions in Consolidation Coal, we concluded that in failing to make Fund contributions for worked lunch hours, the employer had failed "to account for the miner's contractual entitlement to a half-hour lunch period during which he is not required to work," and that,
 
 
 19
 "[W]hen an employer requests a miner to forego his contractual right to a lunch period, the employer cannot expect to gain the extra one-half hour of employee productivity without the concurrent responsibility to contribute to that employee's pension and health funds."
 
 
 20
 This outcome is consonant with the provisions of the wage agreements and with industry practice.
 
 
 21
 866 F.2d at 602 (footnotes omitted).
 
 
 22
 While the Trustees argue that our interpretation of the Wage Agreements in Consolidation Coal is determinative of the worked lunch hours issue, Beth Energy contends that a number of factors remove this case from the reach of Consolidation Coal. Beth Energy first asserts that under the terms of Articles IV and XX of the Wage Agreements, it has no monetary obligation to the Funds based on worked lunch hours. Beth Energy argues essentially that while an employee may forego his contractually scheduled lunch period, this does not mean that he does not eat lunch; in the interest of production efficiency, the miner simply eats lunch at a time later than he otherwise would have. The total amount of time worked is the same. Beth Energy compensates the miner at a premium rate, not because he works longer, but because his delaying lunch increases the efficiency of the mining operation.
 
 
 23
 Beth Energy claims that when the contract terms are evaluated, in light of actual worked lunch hour practice, it is clear that no additional contribution is required. Beth Energy focuses upon Article IV(b) of the wage agreement which defines the "basic" work day as eight hours portal-to-portal. Uninterrupted staggered thirty minute lunch periods are included in this eight hour period. Beth Energy then argues that Article XX establishes that the hours actually worked (the portal-to-portal hours)--and only those hours--trigger the contribution obligation. Thus, a miner who delays his regularly scheduled lunch hour and, in reality, does no additional work, is entitled only to contribution for the eight hours of portal-to-portal time; no contribution is required because no additional hours are worked. Beth Energy buttresses this position by relying on the testimony of collective bargaining negotiators to the effect that contributions to the Funds were intended to be based only on actual "clock time"; contributions were not intended to be based on premium pay where that premium pay was not the result of an increase in the number of hours worked.
 
 
 24
 This argument does not persuade us any more than it did the district court. During these proceedings to the point of our decision in Consolidation Coal, Beth Energy consistently defined the "worked lunch hour" as "the practice of an employee foregoing his or her uninterrupted lunch period in exchange for premium pay." See, e.g., App. 113a, 173a, 262-263a, 341a, 422a, 502a, 543a and 605a. It was only after our decision in Consolidation Coal that Beth Energy explained that this term really means "delayed lunch hour." This redefinition renders the phrase "worked lunch hour" meaningless.
 
 
 25
 We believe that neither Beth Energy's practice of awarding premium pay for the worked lunch hour nor its accounting for these lunch hours under "Hours Four" squares with this redefinition. In our view, the fact that Beth Energy provides premium pay for "worked lunch hours" suggests that the miner, in foregoing his contractually scheduled lunch hour, is conferring something of special value upon Beth Energy or is giving up something of value to which he is contractually entitled. In working through the scheduled lunch break, it seems clear that the employee does something which the Wage Agreements do not require him to do and is, therefore, entitled to additional compensation. It is also clear that the Wage Agreements contemplate that there will be times when contributions are due on hours for which the miner is paid at a premium.
 
 
 26
 Article XX(d)(1)(vii) of the Wage Agreement provides that:
 
 
 27
 [h]ours actually worked for which a premium pay of any type is provided shall be treated for purposes of Employer contributions to the Trust as though worked on a straight-time basis.
 
 
 28
 App. at 77a. The miner does actually work through his contractual lunch period and is provided with premium pay. The plain language of the Agreement establishes that contributions are due on a straight-time basis.
 
 
 29
 In concluding that Beth Energy is obligated to the Funds for worked lunch hours, we have also found it significant that, in accounting for worked lunch hours in the category "Hours 4," Beth Energy reported these hours as overtime hours for purposes of awarding pension credit. Employee pay stubs also reflect credit for overtime. App. at 392a. This accounting for the hours in question implies recognition on the part of Beth Energy that extra work is being performed. If, as Beth Energy claims, the worked lunch hour issue involves nothing beyond juggling of lunch periods, we find it difficult to understand why Beth Energy would provide premium pay and report worked lunches as overtime for pension credit purposes. In sum, we find nothing in Beth Energy's actual worked lunch hour practice which would support our deviating from the construction given the identical provisions of the Wage Agreements in Consolidation Coal.[5]
 
 
 30
 We find no merit to Beth Energy's contention that this case is distinguishable from Consolidation Coal in that the record here, unlike the record in Consolidation Coal, contains persuasive evidence relating to the collective bargaining history of the Wage Agreements. We think that the district court was correct in finding "no material difference between the evidence of bargaining history before the Court of Appeals in Consolidation Coal and the evidence of bargaining history before this court."[6] Connors v. Beth Energy Mines, Inc., No. 87-1392, 1989 WL 21328 (E.D.Pa., March 13, 1989) at 6.
 
 
 31
 Finally, we reject Beth Energy's argument that evidence relating to industry practice with respect to worked lunch hours was improperly considered by the district court. In an affidavit made by Judy L. Lance, the Fund's Audit Manager, Lance stated that her audit review of the top 40 contributors to the Funds revealed only three instances in which the auditors identified underpayment of contributions to the Funds because of improper reporting of worked lunch hours.
 
 
 32
 Beth Energy contends that the Trustees gave up the right to rely on this affidavit and any other evidence of industry practice when they refused to answer Beth Energy's Interrogatory 16. The Trustees declined to answer this interrogatory, which sought identification of employers determined by audit to have credited lunch hours improperly, on the ground that "a response would serve no purpose." Based upon this refusal, Beth Energy contends that "through that sworn discovery statement, the Funds ... effectively stated that industry practice is irrelevant to this case."We do not believe that the Trustees' refusal to answer the interrogatory posed mandated the district court to refuse consideration of evidence relevant to industry practice. Given the Trustees' rather vague response to the interrogatory, Beth Energy certainly could have sought clarification of the Trustees' intent to rely on industry practice, moved to compel discovery, or countered the material set forth in the affidavits.
 
 
 33
 In sum, we find nothing in the record before us which would remove this case from the holding in Consolidation Coal and will, therefore, affirm the district court's determination that Beth Energy is required, under the terms of the Wage Agreements, to make Fund contributions based upon worked lunch hours.[7]
 
 III.
 
 34
 Having concluded that Beth Energy is liable to the Funds for worked lunch hour contributions, we must next determine the extent of that liability. Relying on the applicable three year statute of limitations,[8] the district court granted Beth Energy's motion for partial summary judgment and limited the Funds' recovery to those contributions which were due from March 11, 1984 forward. The Funds argue that the district court erred in failing to apply the doctrine of equitable tolling to stay the running of the statute. Our review is plenary. In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 319 (3d Cir.1983).
 
 
 35
 Under Pennsylvania law governing the doctrine of equitable tolling, it is clear that "the courts have not required fraud in the strictest sense, encompassing an intent to deceive, but rather have defined fraud in the broadest sense to include an unintentional deception." Nesbit v. Erie Coach Co., 416 Pa. 89, 96, 204 A.2d 473, 476 (1964). Even under this broad interpretation of fraud, however, it is clear that, in order for the doctrine of equitable tolling to apply, the defendants' actions must have amounted "to an affirmative inducement to plaintiff to delay bringing the action." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir.1985). The intent of the defendant in making this affirmative inducement is irrelevant; "it is the effect upon the plaintiff, not the intention of the defendant, that is pertinent." Swietlowich v. County of Bucks, 610 F.2d 1157, 1162 (3d Cir.1979).
 
 
 36
 The burden of proving fraud or concealment, whether intentional or not, rests upon the party making the claim. The evidence presented must be clear, precise and convincing. "[M]ere mistake, misunderstanding, or lack of knowledge is not sufficient to toll the statute of limitations." Molineaux v. Reed, 516 Pa. 398, 403, 532 A.2d 792, 794 (1987).
 
 
 37
 Our review of the record reveals no "clear, precise and convincing evidence" to establish that Beth Energy acted intentionally to mislead the Trustees in revising its method of accounting for worked lunch hours. The inquiry thus becomes whether Beth Energy has engaged in unintentional deception. The Funds argue that Beth Energy's change in the reporting of worked lunch hours without notification to the Funds constituted an affirmative act which had the effect of deceiving the Funds so that suit was delayed. The Trustees argue that "through no fault of their own, the Trustees were unaware of Beth Energy's practice of misreporting worked lunch hours and, thus, were unaware of their claim for delinquent contributions." The claim was not discovered until 1985 when the Funds conducted an audit of Beth Elkhorn records.
 
 
 38
 In our view, the record does not support the Trustees' construction of the facts. We recognize that there is serious disagreement over whether the Funds were notified or became aware of the change in accounting for worked lunch hours at some time prior to the 1985 audit. The precise details of this disagreement are not relevant to this discussion, however, because we find that, even on the basis of what is undisputed, the Funds are not entitled to invoke the doctrine of equitable tolling.
 
 
 39
 The parties agree that at all times relevant to this action, Beth Energy supplied the Funds with bi-weekly magnetic tape reports which contained detailed information on Beth Energy's accounting for worked lunch hours. In these reports, hours were divided by type, individual employee, and location. It is undisputed that these tapes reflected the change in accounting for worked lunch hours as soon as the change was made. The Trustees admit that the tapes' "breakdown of hours type included Beth Energy's reporting of worked lunch hours as union committee time" but argue that "consistent smaller misrepresentations are much more difficult to detect than a one-time large anomaly in reporting." We believe that while this may be so, these tapes were sufficient to put the Trustees on notice of claims based upon the misreporting of worked lunch hours.
 
 
 40
 As the Trustees have noted, even under accrual of actions and equitable tolling rules, the limitations period begins to run at the point where the plaintiff knew or should have known of the cause of action. See, e.g., Keystone Insurance Co. v. Houghton, 863 F.2d 1125, 1129 (3d Cir.1988) (accrual), and Vernau v. Vic's Market, Inc., 896 F.2d 43 (3d Cir.1990) (Pennsylvania tolling principles). In light of the bi-weekly reports reflecting the change in accounting for worked lunch hours, we find that the Trustees should have become aware, in the exercise of reasonable diligence, of claims arising from accounting for worked lunch hours, prior to the 1985 audit. We will, therefore, affirm the district court's conclusion that those claims based on misreporting of worked lunch hours prior to March 11, 1984, are time-barred.[9]
 
 IV.
 
 41
 The final issue which we are called upon to address involves the district court's award of and Beth Energy's challenge to interest and liquidated damages incurred during periods of court-imposed delay. Beth Energy argues that in enacting ERISA, Congress did not contemplate that damage and interest assessments would continue during the period of delay which resulted from the district court's suspending these proceedings pending our decision in Consolidation Coal. Beth Energy also argues that interest and damages should not have been assessed during a period of extension of time for discovery requested by the Trustees which amounted to 103 days for which interest and damages were calculated at $34,533.44. We are asked to rule that the district court's assessment of this amount was error and that no interest or liquidated damages are due for the court-imposed periods of delay. Here, too, our review is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981).
 
 
 42
 In order to resolve this question, we look to 29 U.S.C. Sec. 1132(g)(2) which provides that, under ERISA, interest on unpaid contributions and liquidated damages will be awarded to a retirement plan in any successful action based upon delinquent contributions. We have held that the statutory language is clear; the award of damages and interest is mandatory. United Retail and Wholesale Employees Pension Fund v. Yahn and McDonnell, Inc., 787 F.2d 128, 134-35 (3d Cir.1986).
 
 
 43
 Beth Energy is unable to provide us with any authority in support of its proposition that the damage and interest award becomes discretionary during periods of delay not attributable to the defendant. Because we find no reason to believe that we are not bound by the mandatory language of the statute, we will affirm the district court's award of interest and liquidated damages.
 
 V.
 
 44
 Having found no error in the district court's application of our holding in Consolidation Coal to the facts of this case, in its determination that claims prior to March 11, 1984 are time-barred, or in its calculation of interest and damages, we will affirm the judgment of the district court.
 
 
 
 [1]
 These four funds were established in order to provide pension, health, and other welfare benefits to certain miners and their dependents. The levels of benefits to be paid and relevant eligibility requirements are negotiated by the parties to the Wage Agreements. Benefits are paid from contributions made by signatory employers in accordance with formulae set forth in the Wage Agreements
 
 
 [2]
 The Trustees also sought contributions for so-called "grievance-hours." The grievance hour claims are not at issue here
 
 
 [3]
 The Beth Energy hours accounting system was derived from an instruction booklet prepared by the Funds in conjunction with the parties to the Wage Agreements. The booklet identified four basic categories into which employee hours might fall. "Hours 1" was defined to "[include] all hours worked, or fractions thereof, by all employees. Hours 1 must include all shift time paid for (portal to portal, lunch time, etc.) as such time is specified in the Agreements." Contributions to the Fund were required for each hour listed in this category. "Hours 2" represented "all time for which employees are paid by the employer but during which no classified work is performed." This category was to include time spent for vacation, holidays, jury duty, bereavement, etc. "Hours 3" represented sickness and accident hours not paid for by the employer, and "Hours 4" was to include contractual union committee work hours. No Fund contributions were required for Hours 2, 3, or 4. Employees did, however, receive vesting credit and benefit accrual for Hours 3 and 4
 
 
 [4]
 The record reflects a vigorous factual dispute over when the Funds became aware of the change in accounting procedure. Beth Energy contends that the Trustees were notified of the change late in 1983 or 1984. Our analysis does not require that we determine which view of the facts is correct
 
 
 [5]
 The underlying purposes of federal labor policy are best served where the collective bargaining agreement is interpreted and enforced uniformly. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985)
 
 
 [6]
 The district court noted that it had before it the affidavit of Roger Haynes, a participant in the collective bargaining process underlying the Wage Agreements. The Haynes testimony relative to bargaining history was also available to us in Consolidation Coal
 
 
 [7]
 In reaching this conclusion, we have not overlooked Internal Operating Procedure 9.1 which provides that no subsequent panel overrules a published opinion of a previous panel. Rather, we do not regard that procedure as controlling as our decision in Consolidation Coal was predicated on the undisputed facts in that record which were employed to interpret the contract. Beth Energy was not a party to that litigation. We regard Internal Operating Procedure 9.1 as applying to rules of law
 
 
 [8]
 The parties do not dispute that the three year statute of limitations set forth in Pennsylvania's Wage Payment Collection Law, 43 Pa.Stat.Ann. Sec. 260.9a(g) (Purdon Supp.1985) is controlling. This issue was resolved in Consolidation Coal, 866 F.2d at 604
 
 
 [9]
 We are aware that our affirmance on the equitable tolling issue rests on an analysis different from that employed by the district court. While we believe that the district court may have placed undue emphasis on the issue of intent to deceive, we are confident that the result reached was correct and that any error was harmless