**Edwin H. STIER, et al., Plaintiffs,**

v.

**SATNICK DEVELOPMENT CORP.,**
etc., et al., Defendants.

Civil Action No. 96–2607.

United States District Court,
D.  New Jersey.

Aug. 4, 1997.

Kevin P. McGovern, Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano, Kenilworth, NJ, for Plaintiffs.

Charles J. Kleiner, Schlacter & Schlacter, Hackensack, NJ, for Defendants.

## OPINION

WOLIN, District Judge.

This action is before the Court on several motions of the defendant Satnick Development Corp. ("Satnick"). Satnick moves to dismiss a portion of the claims of the plaintiffs, Edwin H. Stier (the "Trustee") and the Teamsters Industrial Employees Pension and Welfare Funds, Inc. (the "Funds"), because the claims are allegedly barred by the applicable statute of limitations. Satnick also moves to dismiss this action because the Trustee and the Funds are allegedly bound by a mediation and arbitration agreement. The Court has considered these matters upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Satnick's motion will be denied in its entirety.

## BACKGROUND

The plaintiff Funds are multi-employer benefit funds as defined under the Employee Retirement Income Security Act of 1974 ("ERISA") and are administered in accordance with their respective trust indentures. Edwin H. Stier is Chairperson of the Board of Trustees, which administers daily Fund operations.

Local Union No. 560, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 560") is a labor organization. Local 560 and Satnick signed and later renewed a collective bargaining agreement (the "CBA") that required Satnick to contribute monthly to the Funds on behalf of all bargaining unit employees.

The initial period for the CBA was from July 1, 1981 through June 30, 1984. It was later extended from July 1, 1984 through June 30, 1987. Finally, the CBA was extended to include the period between July 1, 1987 through June 30, 1990.

Under the CBA, Satnick was required to submit contribution reports, indicating each covered employee's wages and hours. Satnick was to certify in each report that each report reflected all employees entitled to contributions.

The CBA between Satnick and Local 560 indicates that all disputes between Satnick and Local 560 must be submitted to mediation or arbitration before resort to judicial processes:

> All disputes arising out of the interpretation or application of this agreement shall first be taken up between the Employer and the Union.... In the event that the Employer and the Union are unable to adjust the matter, the dispute shall ... be reduced to writing and referred to the New Jersey State Board of Mediation (whose rules and decisions shall be considered final and binding by both parties to this agreement) for mediation and arbitration.

The Welfare Fund Trust Agreement authorizes the Trustees to sue to effectuate the purposes of the Trust:

> To effectuate the purposes of the Trust, the Trustees shall, without previous approval of or subsequent ratification by any party hereto or any court, tribunal or agency ... institute suit, commence administrative proceedings, and take other such action in the prosecution of or in the defense of any matter involved the Fund.... 

The Pension Fund Trust Agreement also empowers the trustees to sue to enforce the terms of the agreement: "The Trustees are hereby empowered to do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of the plan."

In January of 1994, the Funds began to audit Satnick's payroll and financial records for the period between October 1, 1987 and December 31, 1993 to verify the accuracy of Satnick's contributions. During the audit, fund auditors worked for twenty-seven man days over a twelve day period. The audit covered two hundred and fourteen bargain-

ing unit members for each year of the six years in the audit period.

The plaintiffs claim that after this audit, Fund auditors had not reviewed the payroll records for all of Satnick's employees and that, as a result, the audit remained unfinished and the Funds could not issue an "audit invoice" for Satnick. Satnick argues that at the end of this audit, the plaintiffs concluded that Satnick owed Plaintiffs $157,949.09, plus interest of $76,462.85. According to Satnick, the plaintiffs did not indicate that they needed more time, that their audit was incomplete, or that they were missing records.

The Funds scheduled a return visit to Satnick's premises for August 24, 1994. By letter dated August 4, 1994, the Funds requested Satnick to produce its payroll and other financial records for the period between October 1, 1987 and December 31, 1993 for review. According to the plaintiffs, this audit was a continuation of the first audit. According to Satnick, this was an attempt by the plaintiffs to re-audit the period already audited in January and February of 1994. On August 23, 1994, Satnick advised the Funds that it would not produce its records.

On December 27, 1994, the Funds sued Satnick in the United States District Court for the District of New Jersey. The Funds sought to have Satnick produce the records at issue so that the Funds could verify whether Satnick was delinquent in its contributions.

In February of 1996, Satnick and the plaintiffs entered into a Stipulation allowing the plaintiffs to audit Satnick's books and records. According to the plaintiffs, both parties reserved the right to argue later whether Satnick's refusal to produce its records affected the statute of limitations in a subsequent delinquency action.

The audit was conducted between April 22, 1996 and May 3, 1996. At the conclusion, plaintiffs advised Satnick that it was delinquent in the amount of $242,011.93—$157,669.89, plus interest of $84,342.04.

On June 3, 1996, the plaintiffs then brought this action. The plaintiffs seek to recover the alleged delinquency and seek an order directing Satnick to submit to another audit, this time for the period between January 1, 1994 through January 31, 1995. Lastly, plaintiffs seek to toll the six-year statute of limitations for any delinquent contributions discovered by the plaintiffs in their proposed audit for the period between January 1, 1994 through January 31, 1995.

## DISCUSSION

### I. No Portion of the Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations

■ New Jersey's six-year statute of limitations applicable to contract actions applies also to claims under ERISA to recover delinquent pension contributions. *See Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Pub of New Jersey,* 744 F.Supp. 91 (D.N.J.1990). The statute of limitations will be tolled, however, where the defendant affirmatively conceals the facts that would allow plaintiff to realize that a cause of action exists. *See Plain v. Flicker,* 645 F.Supp. 898, 902–03 (D.N.J.1986). Active concealment tolls the statute of limitations until the plaintiff exercising reasonable diligence knows or should know of the fraud. *See id.*

■ To determine whether an employer's affirmative misrepresentations on monthly ERISA reports tolls the statute of limitations for a fund or trustee's suit against the employer for deficient ERISA contributions, the Court must assess whether the deficiencies were apparent from the face of the reports. *See, e.g., Sheet Metal Workers, Local 19 v. 2300 Group, Inc.,* 949 F.2d 1274, 1282–83 (3d Cir.1991) (holding tolling appropriate where no aspect of reports should have alerted plaintiffs to irregularities); *Connors v. Beth Energy Mines, Inc.,* 920 F.2d 205, 212 (3d Cir.1990) (holding that tolling inappropriate where data supplied to fund reflected change in accounting method, which was central to dispute); *Vernau v. Vic's Market, Inc.,* 896 F.2d 43, 46–47 (3d Cir.1990) (holding tolling inappropriate where employer supplied plaintiff with figures which would have revealed

deficiency to reasonably diligent agent for trustees)

The plaintiffs filed this action to recover the Satnick's delinquent contributions on June 3, 1996. Satnick claims that any claims for delinquent contributions for the period between October 31, 1987 through June 2, 1990 are barred because they occurred more than six years before the plaintiffs filed this action on June 3, 1996.

■ The plaintiffs claim that Satnick affirmatively concealed the records necessary for plaintiffs to discover that they had a claim, thereby tolling the statute of limitations. Plaintiffs claim that Satnick affirmatively concealed its deficiencies in two ways. First, it refused "to produce its financial records to the Funds for the purpose of an audit." Second, the plaintiffs allege that Satnick misrepresented on its monthly contribution reports the employees for whom Satnick was required to make contributions and that Satnick made material misrepresentation by certifying that its monthly contributions complied with the CBA.

The Court finds that the statute of limitations was tolled by Satnick's misstatements of its covered employees on its monthly contribution reports. By certifying that its monthly contributions complied with the CBA, Satnick affirmatively concealed its noncompliance with the CBA. There appears to be no basis on which the plaintiffs could have discovered the misstatements from the face of the reports. The Court finds, thus, that the plaintiffs knew or should have discovered the noncompliance at the time of the initial audit in January of 1994. Consequently, the statute of limitations began to run in January of 1994; it will not expire until the year 2000;

the plaintiffs' action is timely; and, the Court must deny Satnick's motion to dismiss portions of the plaintiffs' claims as barred by the statute of limitations.

## II. The Trustee Is Not Required To Mediate or Arbitrate Its Claims Against Satnick

■ Section 1132(a)(3) and (g) of United States Code title 29 specifically authorize a fund trustee to bring a civil action in federal court to enforce 29 U.S.C. § 1145.[1] Arbitration is not required in a suit by a trustee against an employer to recover delinquent contributions to a multiemployer benefit plan, unless the terms of the trust agreement or the terms of the relevant collective-bargaining agreement, contain such a requirement.[2] *See. e.g., Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 372–73, 104 S.Ct. 1844, 1849–50, 80 L.Ed.2d 366 (1984); *Trustees of the Local 478 Trucking & Allied Indus. Pension Fund v. Siemens Corp.,* 721 F.2d 451 (3d Cir.1983).

■ Satnick argues that the plaintiffs must submit their claims to arbitration, because the CBA between Satnick and Local 561 contains a clause indicating that all disputes must be referred to mediation and arbitration. The Court disagrees, because Satnick pulls the language out of context. The entirety of the relevant clause clearly indicates an intent to refer only disputes between Local 561 and Satnick to mediation and arbitration, the clause makes no mention of the trustee:

All disputes arising out of the interpretation or application of this agreement shall first be taken up between the Employer

---

1. Section 1145 provides:
   Every employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms of and conditions of such plan or such agreement.
   29 U.S.C. § 1145.

2. The defendants incorrectly argue that a presumption in favor of arbitration applies to the dispute between the trustee and Satnick. (*See. e.g.,* Defs. Reply Br. at 19.) The Supreme Court

has explicitly held that no presumption of arbitrability applies to a dispute such as the present one, between trustee and employer: "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements." *Schneider Moving & Storage Co.,* 466 U.S. at 372, 104 S.Ct. at 1849. Indeed, the argument that a presumption of arbitrability applies borders on the sanctionable.

and the Union. . . . In the event that the Employer and the Union are unable to adjust the matter, the dispute shall . . . be reduced to writing and referred to the New Jersey State Board of Mediation (whose rules and decisions shall be considered final and binding by both parties to this agreement) for mediation and arbitration.

Thus, because the CBA arbitration clause does not specifically bind the Trustee, the clause does not require the Trustee to submit to arbitration.

 Satnick argues also that the trustee is bound to arbitrate because under the trust agreement, the trustee is authorized to commence administrative proceedings. Again Satnick is incorrect. Although the language of the Welfare Trust Agreement may authorize arbitration, it does not require arbitration:

> To effectuate the purposes of the Trust, the Trustees shall, without previous approval of or subsequent ratification by any party hereto or any court, tribunal or agency . . . institute suit, commence administrative proceedings, and take other such action in the prosecution of or in the defense of any matter involved the Fund. . . .

Nor does the Pension Fund Trust Agreement require the Trustee to submit to mediation or arbitration. Rather, the Pension Fund Trust Agreement empowers the Trustee to sue: "The Trustees are hereby empowered to do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of the plan. . . ." This includes the power to "bring an action on behalf of the Fund pursuant to Sections 502(g) and 515 of ERISA."

Because none of the relevant agreements requires the Trustee to submit its claims regarding Satnick's allegedly deficient contributions to arbitration or mediation, the Court must deny Satnick's motion to dismiss this action pending mediation or arbitration.

## CONCLUSION

For the reasons stated herein, the Court must deny Satnick's motion to dismiss on the grounds of both statute of limitations and arbitration.