**Cheryl CHAPMAN, Plaintiff–Appellant,**

**v.**

**CHOICECARE LONG ISLAND TERM DISABILITY PLAN, Defendant– Appellee.**

**Docket No. 01–7282.**

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 2001.

Decided April 29, 2002.

Harry J. Binder, Binder & Binder, P.C., Hauppauge, NY, for Plaintiff–Appellant.

Evan L. Gordon, Law Office of Evan L. Gordon, New York, NY, for Defendant–Appellee.

Before: CARDAMONE, LEVAL, and SOTOMAYOR, Circuit Judges.

CARDAMONE, Circuit Judge.

We have before us on this appeal a plaintiff who declares that she is mentally disabled. Yet her claim for disability benefits under her employer's benefits plan was denied as untimely filed, as was her request for administrative review. She initiated suit in district court against the plan for judicial review of this decision. Although plaintiff's counsel argued that the untimely filings were a product of plaintiff's disabling mental condition, summary judgment was granted to defendant.

Principal among the issues with which we must deal is whether there is a limitations period for the filing of plaintiff's administrative appeal. Limitations periods perform the salutary office of preventing the assertion of rights long after memories have faded that would show such rights never existed, or had been satisfied and extinguished, if they did once exist. But a limitations period may also sometimes serve as a refuge for an inequity, and make the rule designed to prevent inequity the very means for it to succeed. We leave this question for the district court to resolve on the remand that we direct in this case.

## BACKGROUND

Plaintiff Cheryl Chapman (plaintiff or claimant) formerly worked as a claims analyst/recovery specialist for ChoiceCare Long Island. Her last day of work was January 19, 1995, after which she says she could no longer perform her duties be-cause of a mental disability. With the assistance of counsel, plaintiff submitted in November 1996 a long term disability benefits application to First UNUM Life Insurance Company (First UNUM). First UNUM was under contract with defendant ChoiceCare Long Island Long Term Disability Plan (Plan) to "pay the benefits" provided in a group long term disability policy covering ChoiceCare Long Island employees.

First UNUM denied plaintiff's claim as untimely filed. In a letter to plaintiff's counsel dated January 29, 1997 the insurance company cited the policy's proof of claim provision, which states that proof must be given "no later than 90 days after the end of the elimination period" or "as soon [thereafter] as reasonably possible." The "elimination period" is defined in the policy to be a period of 90 days in which no benefit is payable. Although the policy says nothing about what qualifies as "reasonably possible," the letter denying benefits explains that proof will not be considered if submitted later than one year after the deadline. Based on a disability date of January 20, 1995, plaintiff's elimination period ended April 19, 1995 and the deadline for submitting proof under First UNUM's reasoning would have been July 19, 1996—four months before plaintiff's papers were filed. First UNUM's letter further informed claimant that a written request for review of a claims denial must be sent within 60 days of the receipt of the notice of denial and absent such a request, the "claims decision will be final."

By letter dated April 11, 1997 plaintiff's counsel asked for review. The parties agree this letter was ten days late. First UNUM denied the appeal in a May 29, 1997 letter, upholding its original decision with respect to the untimeliness of plain-

tiff's proof of claim, and noting "[a]ddition-ally" that the request for review was also untimely.

Plaintiff commenced the instant litigation in the United States District Court for the Eastern District of New York (Hurley, J.) on June 29, 1998. Pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, Chapman sought in her complaint (1) a declaratory judgment that from January 19, 1995 she was continuously disabled under the Plan's provisions and (2) an order for the Plan to pay her disability benefits.

The Plan moved for summary judgment on November 12, 1999, offering three grounds in support of its motion: (1) the Plan is not a proper party defendant; (2) plaintiff's proof of claim was not timely filed; and (3) plaintiff did not timely exhaust her administrative remedies. After oral argument on the motion on February 23, 2001, the district court ruled from the bench that a question of fact regarding whether plaintiff was entitled to equitable tolling for the late filing of her claim was mooted because plaintiff should have sued First UNUM, the insurance company, and not the Plan as defendant in her action; and, further, that plaintiff had failed to exhaust her intraplan remedies. Summary judgment was granted to defendant and entered on March 1, 2001. From that judgment, plaintiff filed this appeal.

### DISCUSSION

Plaintiff argues principally: (1) that the Plan is not a proper party defendant, and (2) that the doctrine of equitable tolling excuses her untimely administrative appeal. We review the grant of summary judgment *de novo*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 69 (2d Cir.2001), affirming only when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.

R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### I Whether the Plan Is a Proper Party

The Plan points out that under the terms of its policy with First UNUM, the insurance company promised to pay plaintiff if she were to qualify for long term disability benefits. The Plan thereby reasons that since it owes no obligation to plaintiff, it should not be a party defendant. Instead, the only proper defendant is First UNUM, the insurance company.

ERISA expressly provides that a "participant or beneficiary" may bring suit "to recover benefits due ... under the terms of [a] plan" or "to enforce ... rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1994). It goes on to provide in 29 U.S.C. § 1132(d)(1) that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity," and in subsection (d)(2) that "[a]ny money judgment ... against an employee benefit plan shall be enforceable only against the plan as an entity." §§ 1132(d)(1) & (2).

These provisions of the statute make plain that a plan can be held liable in its own name for a money judgment. We see no reason why such a liability should not arise upon a beneficiary's claim of entitlement to receive benefits from the plan. The Plan's argument to the effect that it may not be sued because it has contracted with First UNUM to make payments to Plan beneficiaries is wholly unsupported by the language of the statute.

Several times in prior opinions we have indicated that a plan is a proper defendant in an action to recover benefits under § 1132(a)(1)(B). "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v.*

*Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) (citing to § 1132(d)(2)). *See also Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998). The view espoused in *Leonelli* is also consistent with general practice. *See, e.g.*, Martin Wald & David E. Kenty, *ERISA: A Comprehensive Guide* § 7.5 (1991) ("Employee benefits plans ... are the most frequent defendants in suits to recover benefits.").[1]

Other circuits have noted that benefits may be recovered against a plan administrator. *See, e.g.*, *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n. 4 (7th Cir.2001); *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir.1998); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997) (per curiam); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir.1997); *cf. Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 115–16 (D.Conn.1999) (finding that plan administrators, where they are administering the plan and controlling the distribution of funds from the plan's assets, may be sued in addition to an ERISA plan, for claimed benefits). Those holdings are entirely consistent with the view we expressed in *Leonelli* and *Crocco* that "the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli*, 887 F.2d at 1199; *Crocco*, 137 F.3d at 107.

Seeking to evade the statutory language, the Plan relies on *Nozar v. John Hancock Mut. Life Ins. Co.*, No. 89 C 5496, 1990 WL 103216 (N.D.Ill. July 19, 1990). That case held "[a] suit to recover benefits is properly brought against the party that decides whether to grant or deny benefits." *Id.* at *3. But the central question in *Nozar* was whether the insurance company that issued a group insurance policy for an employer's welfare benefits plan was an administrator of that plan. The rule enunciated in *Nozar* was designed to identify who qualifies as an administrator; it does not purport to be a rule for deciding whether a plan is a proper party defendant. In fact, *Nozar* is silent as to the propriety of suing a plan as compared to an administrator, since that plaintiff did not sue the benefits plan.

We reject the Plan's argument that it is not a proper defendant.

## II Plaintiff's Waiver Argument

■ Plaintiff argues that inasmuch as First UNUM ruled on the merits of her appeal, its argument that her appeal was untimely has been waived. There is no merit in plaintiff's contention.

■ Federal common law and New York common law both define waiver as an intentional relinquishment and abandonment of a known right or privilege. *Compare United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *HECI Exploration Co., Employees' Profit Sharing Plan v. Holloway (In re HECI Exploration Co.)*, 862 F.2d 513, 523 (5th Cir.1988) (applying ERISA), *with Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980). More specifically, in the context of New York insurance law, we have held "that an insurer is deemed ... to have intended to waive a defense to coverage" if it failed to assert the defense when denying coverage to its insured. *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir.1991); *see also Orgeron v. Moran Towing Co.*, No. 94 CIV. 7483, 1995 WL 708688, at *3 (S.D.N.Y. Nov.30, 1995) (finding waiver where an insurer neglected to cite the

---

1. In *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985), the Ninth Circuit interpreted §§ 1132(a)(1)(B) & (d) to require that suits for recovery of benefits be brought *only* against a plan.

untimeliness of an employee's claim and appeal as a reason for denying benefits under employee benefits plan). Here, in denying Chapman's appeal, First UNUM upheld the denial of benefits because of the untimeliness of her claims application and "[a]dditionally" because her request for review was submitted after the 60–day deadline. This defense, having been asserted in the review letter, is properly preserved and may not be said to have been waived.

We cannot adopt plaintiff's position that by use of the word "additionally," First UNUM did no more than factually represent that her appeal was late. Nor do we agree with her contention that First UNUM could not offer alternative bases for its decision without waiving one or the other, a proposition for which plaintiff cites no authority. It would not be a constructive policy to find that asserted defenses to benefits claims are waived where a denial on the merits is offered in the alternative. Imposing such a rule would limit the usefulness of the administrative process. *Cf. Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir.2000) (explaining that "the notice provisions of ERISA are designed to spawn meaningful dialogues between plan administrators and plan members" and should remain "candid statements as to why the administrator framing the notice thinks reimbursement is unwarranted").

### III Untimeliness of Appeal

#### A. *In General*

We require exhaustion of benefit claims brought under ERISA. *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993). More specifically, claimants must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied. *See id.* (noting requirement that all plans provide for carrier review); *Leonelli*, 887 F.2d at 1199 (affirming denial of leave to amend complaint where the plaintiff "made no attempt, as required, to exhaust the administrative remedies provided for under the plan"). In the case at hand, defendant insists that Chapman failed to exhaust her claim because she filed an untimely appeal with First UNUM. In response, plaintiff concedes the lateness of her administrative appeal, but contends that the error should be excused on grounds of equitable tolling. *Cf. Tiger v. AT & T Techs. Plan for Employees' Pensions, Disability Benefits*, 633 F.Supp. 532, 534 (E.D.N.Y.1986) (employee's failure to adhere to administrative review deadlines may be excused on grounds of equitable estoppel).

While the plaintiff's argument accepts the legitimacy of the 60–day time limit, we raise a separate issue that contests that very assumption. Since the time limit the Plan seeks to enforce is not set out in either the policy or the Summary Plan Description, a question arises as to whether the Plan is entitled to enforce it. We consider each of these issues in turn.

#### B. *Equitable Tolling*

Although courts have entertained claims of equitable tolling in the ERISA context, *see, e.g., I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 54 (1st Cir.1999) (claim for benefits under 29 U.S.C. § 1132(a)(1)(B)); *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 211–12 (3d Cir.1990) (claim seeking unpaid ERISA contributions); *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir.1990) (claim seeking withdrawal liability under Multiemployer Pension Plan Amendments Act, which amended ERISA); *Miele v. Pension Plan of N.Y. State Teamsters Conf. Pension &*

*Ret. Fund,* 72 F.Supp.2d 88, 103–05 (E.D.N.Y.1999) (claim seeking proper pension credit pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)), we have never squarely held that it applies to time limits that are specified in plan provisions. Because this point may become moot upon remand, we decline, at this time, to rule on this important question. Nevertheless, if the issue does not become moot, we note that the method by which the district court rejected the plaintiff's equitable tolling argument was in error.

Chapman declares she missed the 60–day deadline for requesting a review because her attorneys, as a result of her mental condition, were uncertain as to whether she wanted to pursue an appeal and whether she had retained them for that task. But the district court granted the Plan summary judgment, stating that plaintiff's counsel could have filed an appeal (and then supplemented the record at a later date), sought an extension of time from First UNUM, or written a letter explaining the circumstances.

 Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled. *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996). Additionally, the burden of proving that tolling is appropriate rests on the plaintiff. *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000). Importantly, a want of diligence by a plaintiff's attorney generally will not prompt a court to provide relief from a limitations period by way of an equitable toll. *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 12 (2d Cir.1994); *see also Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001) (per curiam) ("This Circuit, like her sisters, has found attorney error inadequate to create the 'extraordinary' circumstances equitable tolling requires."). Nonetheless, the kind of attorney errors at

issue in cases where equitable tolling was denied differ materially from the error at issue in the instant case.

For example, in *South,* the plaintiff's attorney was late in initiating a discrimination claim because he first attempted to commence the action one day before the end of the filing deadline via an inapplicable state service of process practice. 28 F.3d at 10, 12. In *Smaldone,* a habeas petitioner filed a late petition based on his attorney's mistaken belief that the limitation period was re-set rather than tolled while state petitions for post-conviction review were pending. 273 F.3d at 138–39. We have also refused to apply equitable relief where a plaintiff alleged that her untimely filing of discrimination charges with the EEOC was due to misinformation given by her attorney. *Keyse v. Cal. Tex. Oil Corp.,* 590 F.2d 45, 47–48 (2d Cir.1978) (per curiam).

In contrast, Chapman's counsel is not asserting unawareness of deadlines or misinformation as to how to request review. Instead, counsel avers that in the process of helping Chapman obtain disability benefits based on her mental illness, that very illness obstructed their efforts because it caused them to be unsure of her wishes and to be doubtful of their authority to represent her in pursuing administrative review. Consequently, even accepting the reasonableness of the district court's suggestions as to what counsel might have done to preserve a timely appeal, those suggestions sidestep the question of whether counsel was required to take action on plaintiff's behalf when they were not sure they had any authority to act at all.

Counsel represented to the district court at oral argument on the summary judgment motion that "[w]hen the application [for disability benefits] was denied, we had some difficulty in getting authorization

from the client to pursue it further." Counsel later reiterated that "we were trying to get permission from Miss Chapman to proceed further, and as soon as we did get that permission we did proceed further." In an affidavit opposing summary judgment, counsel indicated that plaintiff's mental illness "precluded her from interfacing adequately and accurately with this firm ... in pursuing an appeal of First UNUM's denial."

Once counsel was confident in the authority to file a request for review, they claim to have encountered difficulty ensuring the accuracy and completeness of information received from Chapman. Such difficulties led to the delay in filing the request. As succinctly stated in the attorney affidavit, plaintiff's counsel "had significant questions as to whether or not we *could* effectively represent Ms. Chapman because of her inability to participate in, and cooperate with our representation of her—an inability which was caused solely by her severe psychiatric condition." Once their doubts were resolved, they "immediately requested an appeal" of the denial of benefits.

Support for counsel's assertions is not limited solely to the attorneys' affirmations. Rather, the claims are accompanied by exhibits containing a variety of evaluations of plaintiff. In January 1997 a clinical psychologist who had been seeing plaintiff for about a year described her as "severely depressed" and "distrusting of most everyone's motives." In overwhelming situations, Chapman is said to become paralyzed with fear that leaves her either unable to think clearly or overcome by an intense, uncontrollable anger. Prior to working for ChoiceCare Long Island, Chapman was employed by a physician for six years. In September 1996 this doctor wrote that plaintiff had been "more or less out of control" for the previous four

months and claimed she was "outrageous on the phone and totally unreachable." According to other exhibits, plaintiff was hospitalized for deep depression in October 1995. She was again hospitalized in February 1996. On January 24, 1997—five days prior to First UNUM's rejection of her claim for benefits—Chapman was admitted following an attempted suicide due to depression and high levels of frustration. Following a psychological examination in April 1999, Chapman was said to have "difficulty focusing her attention and communicating her ideas in a clear and concise manner."

The sum total of these exhibits highlights characteristics of plaintiff consistent with the difficulties described by her counsel. Equally important, the evidence offered is particularized, *see Boos,* 201 F.3d at 185 (to merit an equitable toll, a Social Security disability claimant must offer a "particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights"), and not limited to simple descriptions of the extent of her alleged disability. *Cf. Guinyard v. Apfel,* No. 99 CIV. 4242, 2000 WL 297165, at *4 (S.D.N.Y. Mar.22, 2000) (refusing to apply equitable tolling where the plaintiff made particularized allegations that related to the merits of her underlying disability claim yet failed to explain why her complaint seeking judicial review was delayed). Finally, considering the fact that the request for review was filed only ten days late, we conclude, in light of the above evidence, that the brevity of the delay provides a basis for finding counsel acted with due diligence. This conclusion is bolstered by the district court's unchallenged finding that a question of fact existed as to whether plaintiff's illness should have also invoked an equitable toll on the issue of whether her original proof of claim was timely filed. If plaintiff's impairment was

sufficient to excuse her own failure to act in a timely fashion, it may also have impaired her attorney's ability to receive clear instructions from her.

For the above reasons, if the district court reaches the equitable tolling argument, we think the proof proffered by claimant's counsel is sufficient to warrant an evidentiary hearing on the question of whether plaintiff's mental illness impaired counsel's efforts to file a timely request for review.

## C. *Deficiencies in Policy and Summary Plan Description*

■ Although not briefed by the parties, we believe there is another issue that should be addressed upon remand. Before addressing it ourselves, however, we must consider whether the argument has been waived. In the usual case, we consider a plaintiff's failure to make an argument to be an abandonment of the issue. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Nevertheless, in rare cases, the court exercises its "discretion to overlook such a failure if manifest injustice would otherwise result." *United States v. Babwah*, 972 F.2d 30, 35 (2d Cir.1992). We invoke this discretionary authority in this case for several reasons. First, it is self-evident that courts should exercise an extra measure of caution when adjudicating the claims of a litigant whose mental capacity is in question. *Cf. Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir.1997) (criminal defendant's alleged incompetence "undermine[d] [the court's] confidence in the reliability of the adversarial testing process"); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir.1991) (noting that, independent of whether a Social Security applicant is represented by counsel, an adminis-

trative law judge's duty to develop the record is "especially important" in cases involving mental impairment). In such cases, the individual is not only less able to participate in the proceedings, but also less able to monitor his or her counsel's performance. Second, given that we are only raising and not deciding the issue, the defendant will not be unfairly prejudiced by our decision. Both sides will have an opportunity fully to brief the relevant questions before the district court. *See Babwah*, 972 F.2d at 35. Third, we note that the Plan itself relied upon and directed us to the regulation we now consider. Given the Plan's reliance upon it, we believe it fair to consider the applicability of the entire regulation to the case, including those sections that do not support the defendant's position.

The issue to be addressed upon remand is whether the 60 day time limit is enforceable given that such limitation is not mentioned in either the policy or the Summary Plan Description. Under the regulations in force at the time of plaintiff's action, employee benefit plans were required to "establish and maintain reasonable claims procedures." 29 C.F.R. § 2560.503–1(b) (1997). Further, the regulations directed that a claims procedure would "be deemed to be reasonable only if it ... [was] described in the summary plan description." § 2560.503–1(b)(1)(ii); *cf. Kennedy*, 989 F.2d at 594 ("[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."). *But see Kenavan v. Empire Blue Cross & Blue Shield*, No. 91 CIV. 2393, 1996 WL 14446, at *3 (S.D.N.Y. Jan. 16, 1996), *aff'd sub nom. Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir.1997) (finding notice of appeals process in benefits letter to be sufficient). The district court must determine, on remand, the applicability of these rules to plaintiff's claim and whether, in light of

the regulations, the Plan is entitled to enforce the time limit. If not, it will be for the district court in the first instance to determine what is the appropriate remedy.

## CONCLUSION

For the reasons stated above, the judgment of the district court is vacated and the case remanded to the district court for further proceedings not inconsistent with this opinion.