**Joseph VITI, Plaintiff,**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 10 Civ. 2908 (CM)(MHD).**

United States District Court, S.D. New York.

Aug. 31, 2011.

Robert J. Bach, Law Office of Robert J. Bach, Esq., New York, NY, for Plaintiff.

Randi Faith Knepper, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Newark, NJ, for Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE THIRD AND FOURTH CAUSES OF ACTION, DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT ON THE THIRD AND FOURTH CAUSES OF ACTION, DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE FIRST AND SECOND CAUSES OF ACTION, AND REFERRING THIS MATTER TO THE HON. MICHAEL A. DOLINGER FOR A HEARING ON EQUITABLE TOLLING

COLLEEN McMAHON, District Judge.

### INTRODUCTION

Plaintiff Joseph Viti ("Viti" or "Plaintiff") brings this action against The Guardian Life Insurance Company of America ("Guardian" or "Defendant") pursuant to § 504(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging Guardian's response to Viti's claim for disability benefits under a long term disability plan (the "Plan") issued by Guardian to Viti's former employer, Sterling Commodities Corporation ("Sterling"). Viti alleges that in October 2005, he became disabled as a consequence of post-traumatic stress he suffered from witnessing the events of 9/11. Viti observed the attack of 9/11 first-hand because he worked in the Sterling offices located at One World Financial Center.

Guardian denied Viti's claim for disability benefits based on mental illness he suffered in connection with his post-traumatic stress disorder. Although both the insurance policy plan and the letter denying Viti's claim clearly stated that any administrative appeal of a claim determination had to be submitted in writing within six months of the claim determination, Viti did nothing until more than seven months after his claim had been denied. On an unspecified date in June 2007,[1] Viti's wife requested an extension of the appeals time period for Viti asserting that Viti mental infirmity had been the cause of his inability to pursue an administrative appeal within the six-month time period. Guardian refused to extend the time period for appeal of the claim determination.

In October 2009, after successfully applying for and receiving Social Security disability benefits ("SSDI"), counsel for Viti again contacted Guardian and asked

---

1. This is the first of many occasions on which the court will note plaintiff's failure to specify precise dates on which events occurred. The letter referred to in the text, which was submitted as an exhibit to Viti's motion—was dated "6–07;" it lacks any indication of whether it was sent on June 1, June 30 or some time in between. It is plaintiff's burden to establish the relevant dates; at the hearing ordered by the Court, the failure to be precise will lead to the failure to establish equitable tolling.

that it reconsider extending Viti's time to appeal the claim determination because Viti had been "incapable of participating in the appeal" as a result of his disability during the appeals time period. (Pl. Ex. 6 GL007.) Guardian again refused to extend the time period for appeals.

In April 2010, Viti filed the instant action. Viti's Complaint asks that the court "direct Guardian to hear his appeal and to provide him a full and fair review of his claim as required by [ERISA]." (Pl. SJ Mot. at 1.)

Guardian moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6); Guardian alleges that this action is barred both by the Plan's short (three—year) statute of limitations and by plaintiff's failure to exhaust administrative remedies. In the alternative, Guardian seeks summary judgment, contending that the claim determination was not arbitrary and capricious. Viti cross-moves for summary judgment based on the documentary evidence submitted to the court.

Because plaintiff has sued the wrong party for the wrong relief, Guardian's motion to dismiss the Third and Fourth Causes of Action is granted and Viti's cross motion for summary judgment on on those counts is denied. That motion presents a relatively straightforward issue.

Not so on the motions addressed to the first two causes of action. This case presents squarely an issue that remains unresolved in this Circuit: whether the doctrine of equitable tolling—which, on appropriate (albeit rare) facts, can suspend the running of a statute of limitations for a time—applies to limitations periods that are established by contract rather than by law. In this case there are two relevant statutes of limitations— one that gives a claimant six months to file an administrative appeal from an adverse ruling, and another that gives him three years from the date he first filed a claim to bring any lawsuit relating to that claim.

Absent equitable tolling, Guardian would be entitled to judgment dismissing the first two Causes of Action as time barred for failing to file this lawsuit within three years after the date when plaintiffs claim for benefits was submitted to the insurer.[2] However, if equitable tolling could be applied to this matter, then—depending on the facts (which have yet to be developed fully)—plaintiff might be entitled to a toll sufficient (albeit just barely sufficient) to render this lawsuit timely. Were the lawsuit itself not time-barred, the court would face the separate question of whether the six-month limitations period for exhausting administrative remedies bars plaintiff from asserting his claims—which are, in essence, claims that he should have been allowed additional time to exhaust his administrative remedies.

The Second Circuit has dodged multiple opportunities to resolve the underlying question, which, it acknowledges, is "important," *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir.2002). This court is equally disinclined to deal with a significant issue of first impression if it does not have to, and unless the facts would warrant an equitable estoppel rendering this lawsuit timely, I, too, could avoid addressing the issue.

Therefore, all parties' motions are denied to the extent they are addressed to the First and Second Causes of action. This denial is without prejudice. The matter is referred to The Hon. Michael A. Dolinger, U.S.M.J., for a hearing on issues

---

2. Plaintiff does not believe that the three year contractual statute of limitations controls, but

as will become apparent, I have determined that plaintiff is wrong.

relating to equitable estoppel. Once that hearing concludes, the motions should be resubmitted, shorn of irrelevant arguments and—if Judge Dolinger and I conclude that plaintiff would be entitled to an equitable toll of at least 205 days—focused on the discrete legal issue that must be resolved if this action is going to proceed.

## BACKGROUND

### The Plan

Sterling maintains a long term disability plan (the "Plan") for the benefit of its participating employees. The Plan is funded through a group insurance policy ("Group Policy") issued by Guardian. Sterling is the Plan sponsor and Guardian is the Plan administrator. Guardian is vested with authority to construe the terms of the Plan and to render claim determinations. In the Group Policy, "Disability or Disabled" is defined in the Definition Section as follows:

These terms mean a covered person has physical, mental or emotional limits caused by a current sickness or injury. And, due to these limits, he or she is: (a) not able to perform, on a full-time basis, the major duties of his or her own occupation; and (b) not able to earn more than this plan's maximum allowed income earned during disability.

The covered person is not disabled if he or she performs any work for wage or profit during the elimination period and for one month after it.

The covered person may be required, on average, to work more than 40 hours per week. In this case, he or she is not disabled if he or she is able to work for 40 hours per week. This limitation does not apply during the first 12 months a covered person works while disabled.

(Def. Ex. A, GL 265.)

### Viti's Disability

In January 2005, Viti alleges that "he started getting sick," and as a result only went to work one to two days per week. (Amended Complaint "AC". ¶ 22.) Viti's illness became progressively worse until, on a morning in October 2005, Viti's wife found him sitting in his car in their driveway, fully dressed and ready to go to work but unable to move. For the next eight months, Viti was constantly either bedridden "or was curled up in a fetal position just rocking back and forth in the corner of his room crying." (AC ¶ 25.) The Complaint alleges that Viti lost interest in all activities and did not "want to bathe or shave or take care of himself." (*Id.*)

In February 2006, Viti began treatment with psychiatrist Dr. Formento, who diagnosed Viti with General Anxiety Disorder. Viti was treated with a combination of counseling and heavy medication. Although he alleges that his panic attacks and agoraphobia continued despite Dr. Formento's care, in May 2006, Viti's condition had improved enough for him to return to work "a couple of days a week."[3] (Pl. Mot. at 3.) Viti avers that this improvement lasted for several months, but that ultimately he was unable to maintain even a modified work schedule "because of increased severity of his panic attacks" and agoraphobia. (*Id.*)

In May 2007, Viti became dissatisfied with the treatment he was receiving from Dr. Formento. In July, 2007, he began

---

**3.** Viti's motion papers and submissions in support of his motion do not indicate the specific date Viti actually returned to work other than to say it was in May 2006. Throughout Viti's Amended Complaint and motion papers there is a consistently failure to provide specific dates that relevant events occurred. When possible, the Court has attempted to surmise relevant dates by searching through the documentary evidence for indications of particular dates.

seeing another psychiatrist, Dr. Staniazek. (AC ¶ 30.) Although the change in doctors resulted in some improvement, Viti maintains that he continued to suffer from agoraphobia and severe panic attacks. (Pl. Mot. at 3.)

**Viti's Disability Claim**

In his initial submission of documents in support of his application for benefits, Viti included an Attending Physician Statement by Dr. Formento dated June 10, 2006 (the "June 2006 Attending Physician's Statement"). Guardian responded to this submission on August 3, 2006. It advised Viti that additional information was needed to consider his claim. Guardian noted that, although Viti claimed his first date of disability was October 1, 2005, he did not receive treatment for his illness from Dr. Formento until February 22, 2006. Since Dr. Formento's evaluation of Viti was not until February 2006, Guardian directed Viti to submit an additional "Attending Physician's Statement completed by [a] physician who [could] certify [Viti's] disability, starting on the date [Viti] first became unable to work because of [Viti's] disability." (Df. Ex. C, GL 175.) Guardian also informed Viti that he needed to send Guardian certain tax return documents to be considered along with his other documentation. (*Id.*)

Although Viti's response to Guardian's request for additional information was a little late, by September 14, 2006, Guardian had received submissions in response to its August correspondence. (Pl. Ex. 1, GL127.) Viti's responsive submission included the tax documents requested by Guardian, as well as an Attending Physician's Statement by Dr. Formento dated August 19, 2006 (the "August 2006 Attending Physician's Statement"). In both the June 2006 Attending Physician's Statement and the August 2006 Attending Physician's Statement, Dr. Formento indicated (1) that Viti suffered from generalized anxiety disorder, (2) that the first date Viti displayed symptoms was October 5, 2005 and (3) that Dr. Formento's first evaluation of Viti occurred on February 22, 2006. (Def. Ex. C, GL 128–129; GL 188–189.) In his Employee Statement, Viti also indicated that the first date of his symptoms was October 1, 2005, and that the date he was first treated for his illness was February 22, 2006. (Def. Ex. C, GL 127.)

In a letter dated November 3, 2006, Guardian denied Viti's claim for benefits. Guardian stated that the denial was because Guardian "did not have sufficient medical certification of a 'disability,' as of the date [Viti] ceased active full-time work." (*Id.* GL 121–124.) The correspondence from Guardian stated:

> According to the employee section of the claim statement, completed by you on August 20, 2006, you ceased working full-time on October 1, 2005, or sometime around that date, because you do not remember the exact date. The accompanying Attending Physician's statement completed by Juan Formento, M.D. (Psychiatry) dated August 19, 2006, states that you were first treated on February 22, 2006 for "Generalized Anxiety Disorder", you were seen on a weekly basis, and you were released to return to full-time work on "05/30/06". Although, Dr. Formento indicated that he took you off work on "10/01/05", he did not treat you for this condition until February 22, 2006, therefore he cannot back date and certify a disability without physically seeing you for that disability. As Plan # 381756 states your long-term disability insurance ends on the date your active full-time service ends for any reason. Since we do not have a physician certifying your claimed disability as of the date you last worked, nor do we have sufficient documentation of your last date worked on a full-time basis,

you do not meet the eligibility requirement for disability coverage. Consequently, we are unable to accept liability on this claim as submitted.

(*Id.* GL 122.)

Along with the letter denying Viti's claim, Guardian sent Viti a document entitled "How To Appeal This Decision," which explicitly laid out Viti's right to appeal the decision and the procedural steps for doing so. (*Id.* GL 123.) The directions for appealing the claim stated unambiguously that the claimant had to submit a "formal request for reconsideration in writing within 180 days of the date" of the initial denial letter. *Id.*

Neither Viti nor anyone on his behalf filed an appeal from Guardian's decision by May 3, 2007, which is 180 days from the date of the letter denying his claim. According to plaintiff, the reason why is that plaintiff had literally hidden the denial of benefits letter because he was unable to deal with it. His wife avers that she first learned of the letter on an unspecified date in "late May" 2007—after the May 3 deadline had passed—when she found it buried in a desk; Mrs. Viti believes that her husband put the letter there when he received it. (Pl. Ex. 1, Declaration of Linda Viti dated September 21, 2010, ¶ 41.)

Having found the letter, Mrs. Viti contacted Guardian and asked for an extension of the deadline to appeal the denial of Viti's claim. We have no idea when she made this request. We know only that it was prior to June 26, 2007, because by letter of that date, Guardian denied Mrs. Viti's request. (*Id.*)

No one—not Viti or anyone acting on his behalf—filed any appeal from this decision with a court.

## Social Security Benefits

On August 15, 2007—less than two months after Guardian refused to hear his appeal—Viti applied for disability benefits under the Social Security Act for a period of disability starting October 2, 2005. On September 11, 2008, Administrative Law Judge Joseph M. Hillegas ("ALJ Hillegas") concluded that plaintiff was entitled to SSDI disability benefits. In his decision, ALJ Hillegas found that Viti, "cannot complete a workday without unscheduled breaks of unreasonable number or duration and cannot respond adequately to work-related stress or changes in an ordinary work routine." (Pl. Ex. 3, GL015.) However, he also found that Viti "can understand, remember and carry out multi-step instructions of moderate complexity; adapt to change; and adjust to supervision; despite panic attacks." (*Id.*)

## Procedural History

On October 8, 2009—over a year after the decision granting his application for SSDI benefits—counsel for Viti sent Guardian a letter, asking Guardian to reconsider its denial of the previous request by Linda Viti to extend the time in which Viti could appeal denial of his claim. Viti's counsel stated, "Mr. Viti's mental condition prevented him from effectively participating in the appeals process," (Pl. Ex. 3, GL006.), and offered that as a reason why the appeal had not been filed within 180 days after the letter denying the claim. In support of this request, counsel for Viti attached to his letter ALJ Hillegas' decision granting Viti Social Security disability benefits, as well as signed statements from Mr. and Mrs. Viti and two therapists who treated Viti during the period following the denial of his claim, Dr. Formento and Dr. Staniazek.[4] (*Id.*) Counsel for Viti asserted

4. The administrative record contains the statements of Mr. Viti and his wife and a signed letter by Marisa L. Montalvo a social worker who provided out-patient counseling to Viti. Although Viti's motion papers and correspondence with Guardian refer to a statement by Dr. Alina Staniazek—a psychiatrist who took over treatment of Viti after Viti became dissatisfied with Dr. Formento—we

in his letter that the statements submitted in connection with Viti's request for an extension "demonstrate [that] Mr. Viti was incapable of participating in the appeal and assisting in the preparation." (*Id.,* GL007.)

On November 2, 2009 Guardian declined to reverse its June 2007 decision not to extend the time for Viti to appeal the denial of his claim, stating, "Because of Mr. Viti's non-compliance with the appeal procedures stated in our November 3, 2006 letter and in the Plan, we are prohibited from conducting a reconsideration review of his claim." (Pl. Ex. 4, GL 057.)

**The Complaint**

On April 5, 2010 Viti filed the original Complaint in this case and subsequently filed an Amended Complaint in August 2010. The Amended Complaint contains Five Causes of Action.

In the First Cause of Action, Viti alleges that because his "mental condition prevented him from filing his appeal by the May 1, 2007 deadline .... [Viti] should have been permitted by Guardian to file [an] appeal [after the deadline had passed]." (AC ¶ 44.) Viti further alleges that "Guardian's failure to review Viti's claim because of his inability to comply with the deadline denied Viti a full and fair revue [sic] of his claim in violation of 29 USC 1133." (*Id.* ¶ 45.)

In the Second Cause of Action, Viti asserts that "Guardian's failure to review Viti's claim because of his inability to comply with the deadline and its failure to consider the reasons for his failure to comply with the deadline was a breach of Guardian's fiduciary duty to Viti in violation of ERISA, 29 USC section 1104(a)(1). (*Id.* ¶ 47.)

In the Third and Fourth Causes of Action, Viti asserts that Guardian has wrongfully withheld "Viti's claims file and any documents guidelines, or protocols that may have been referred to or considered in the adjudication of Viti's claim for benefits" in violation of ERISA, 29 USC 1132(c)(1)(B). In his Fourth Cause of Action Viti asserts that pursuant to ERISA, 29 USC 1132(c)(1)(B) the court should impose a penalty of one hundred dollars per day that Guardian fails to turn over the documentation requested.

In the Fifth Cause of Action, Viti asserts that Guardian has violated its fiduciary duty to Viti under 29 U.S.C. § 104(a)(1) because it has continuously accepted monthly premium payments of $165 from Viti since October 2005, when Viti alleges he became disabled. (AC ¶ 54.)

**Cross Motions**

The parties have submitted cross-motions.

Guardian moves to dismiss the complaint on two separate grounds. First, Guardian argues that Viti's complaint is time-barred since it was filed approximately seven months after three-year statute of limitations period governing claims related to the Plan. Guardian also argues that Viti's claim is facially inadequate because Viti never timely appealed Guardian's claim determination and thus "failed to exhaust the administrative remedies provided for in the Plan, ERISA and the applicable regulations." (Def. Mot. at 1.)

In the alternative, Guardian argues that its claim determination was not arbitrary and capricious and that it is therefore entitled to summary judgment.

Viti cross-moves for summary judgment on Causes of Action One through Four.

have not located a copy of any statement by Dr. Staniazek in the administrative record

that has been filed with this Court.

Neither party has moved with respect to the Fifth Cause of Action.

## DISCUSSION

### Standard of Review

■■■■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's factual allegations must be accepted as true, and all reasonable inferences are drawn in plaintiff's favor. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). "Facial plausibility" exists where the "plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Although a complaint need not set forth detailed factual allegations, it must provide "more than labels and conclusions .... [A] formulaic recitation of the elements of a cause of action" does not suffice. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotation marks omitted). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

■■■■ A district court's analysis on a motion to dismiss is confined to "the allegations contained within the four corners of the complaint," *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998), although it may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002).

■■■■ If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed R. Civ. P. 12(d). "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a ... motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y.2005) (internal quotations marks and citations omitted); *see also Cleveland,* 448 F.3d at 521 ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment"). The court must provide notice that the motion is to be converted and permit the parties to submit additional evidence and briefing pertinent to such a motion. *See id.*; *Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (citing *Fonte v. Bd. of Mgrs. of Cont. Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)).

### Guardian's Motion to Dismiss

Guardian's motion to dismiss is premised on two separate grounds.

First Guardian argues that Viti's First and Second Claims are time-barred, and also that they should be dismissed since he failed to exhaust the Plan's administrative procedures for appealing a claim denial.

Guardian also argues that the Third and Fourth Causes of Action should be dismissed because Guardian is not a proper defendant on those claims.

### *(1) The Relevant Statute of Limitations is Set By Contract, Not By New York Law*

■■■■ Because ERISA does not contain a statute of limitations, courts gener-

ally apply "the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conference Pension & Ret. Fund,* 698 F.2d 593, 598 (2d Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The Second Circuit has held that in New York, the six-year statute of limitations for breach of contract claims generally governs ERISA claims for denial of benefits brought under § 1132. *Id.; see* N.Y. C.P.L.R. § 213 (2009 McKinney).

However, parties to a contract may agree on a limitations period shorter than that prescribed by statute. Indeed, C.P.L.R. § 201 explicitly permits a shorter limitations period where "prescribed by written agreement." N.Y. C.P.L.R. § 201. Therefore, where a benefit plan provides a limitations period shorter than six years, as this Plan does, the limitations period specified in the Plan governs. *See Mitchell v. Shearson Lehman Bros., Inc.,* 1997 WL 277381 at *2 (S.D.N.Y. May 27, 1997).

The Plan in this case contains a provision prescribing a contractual three-year period of limitations:

> An employee can't bring a legal action against this Policy until 60 days from the date he files proof of loss. And he can't bring legal action against this Policy after three years from the date he files proof of loss.

(Def. Ex. A GL245.) The Second Circuit has only recently ruled that such short limitations periods are fully enforceable—even thought they begin to run before a plaintiff can actually file suit, because the date when a claimant files proof of loss is by definition before he can possibly have exhausted his administrative remedies. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76 (2d Cir.2009).

Applying a three-year limitations period that runs from the date proof of loss was filed (which all parties agree is September 14, 2006), Viti's First and Second Causes of Action appear to be time-barred.

Viti's original application for benefits was filed on June 26, 2006. However, courts often construe the date when proof of loss is filed as the date when the file is complete, rather than the date when the initial submission is made. *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76, 79 (2d Cir. 2009). According to date stamps on Viti's supplemental submission, his file was complete and the claim was ready for adjudication on September 14, 2006. Viewed most favorably to Viti, the three-year contractual limitations period began to run when he finalized his submission on September 14, 2006. Three years after September 14, 2006 is September 14, 2009. Viti did not file this lawsuit until April 5, 2010—some 205 days too late.

Viti argues that the claim he brings in this lawsuit is not an appeal from a denial of benefits; rather, he contends that he is bringing "a request that Guardian be directed to consider Viti's appeal and to remedy the violations of ERISA." (Pl. Mot. at 5.) To support this strained contention, Viti relies on *Terry v. Unum Life Insurance Company of America,* 394 F.3d 108 (2d Cir.2005). *Terry* involved a policy of individual disability income insurance, which was not governed by ERISA. *See Terry* 394 F.3d at 109. In *Terry,* the Second Circuit held that the three-year limitations period set by the policy for "recover[ing] on this policy," did not apply to Terry's action, which challenged Unum's decision to rescind the policy. *Id.* at 109. The fact that rescission necessarily implied that there could be no future recovery on the policy did not make the plaintiff's action one for "recover[ing] on this policy." *Id.*

The Court of Appeals noted, however, that the contractual three-year period

would have applied "to the ordinary situation where an insured, having suffered a loss, files a Proof of Loss and, having received no satisfaction in 60 days, then has three years to file suit from the time the Proof of Loss was required to be furnished." *Id.* That, of course, is precisely this case. Ergo, *Terry* has no applicability here.

Viti's argument that his claim is not about any denial of benefits is pure sophistry. Viti wants disability benefits. He applied for them, but his claim was denied. He failed to appeal from the denial of those benefits in a period prescribed in the Plan. Now he brings a lawsuit that, in effect, asks this court to force Guardian to allow him to exhaust his administrative remedies. Absent equitable tolling (which will be discussed below), Viti cannot resurrect his patently time-barred denial of benefits claim by pretending that it is a claim for something other than recovering the benefits that he was denied long ago. In *Terry* itself, the Second Circuit made that perfectly clear:

> The [contractual limitations period] applies to the ordinary situation where an insured, having suffered a loss, files a Proof of Loss and, having received no satisfactions in 60 days, then has three years to file suit from the time the Proof of Loss was required to be furnished. But the [contractual limitations period] has no applicability to the very different situation where an insurer, believing it has been defrauded, rescinds the policy, and the insured then seeks to challenge the rescission; for in such a situation, no Proof of Loss is required at any time and, conversely, the rescission could easily occur more than three years after some Proof of Loss has been filed. In either, application of the [contractual limitations period] ... would lead to the absurd result that the insured could never challenge the rescission.

*Terry,* 394 F.3d at 108. The claims that Viti purports to assert in his First and Second Causes of Action would not exist if Viti had not filed a Proof of Loss. Ergo, Viti's claim falls outside the narrow parameters of *Terry*.

Viti argues that what he is really doing is asking the court to "order Guardian to hear his appeal," rather than overturn Guardian's denial of benefits. (Pl. Rply. at 2.) But the appeal he wants heard is his belated appeal from the original denial of benefits—which Guardian refused to hear because it, too, was filed too late. Viti wants his appeal heard because he wants the denial of benefits overturned. Guardian's refusal to allow plaintiff to resurrect his administrative appeal from the denial of benefits out of time is part and parcel of the benefits determination, as the Second Circuit recognized in *Terry*. Therefore, the contractual limitations period applies to Guardian's decision not to hear an appeal from its refusal to pay disability benefits to Viti. Were the rule otherwise, the statute of limitations applicable to an ERISA denial of benefits claim would be rendered meaningless, because an aggrieved employee could simply "restart the clock" by filing an out-of-time application and calling it something other than a request for benefits.

I thus reject plaintiff's contention that the limitations period for his claims under the First and Second Causes of Action are governed by CPLR 213(2), which sets a six year statute of limitations for breach of contract actions.

### (2) NY CPLR § 208 Does Not Apply in this Case

█▪ In an effort to evade the time bar, Viti argues that the deadline should be extended pursuant to CPLR § 208, which provides as follows:

> If a person entitled to commence an action is under a disability because of

infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases .... the time within which the action must be commenced shall be extended to three years after the disability ceases ... The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues.

N.Y. C.P.L.R. § 208. Plaintiff argues that this provision applies because he was "insane" within the meaning of this provision when his cause of action accrued (that is, when Guardian denied his claim for benefits) and that the statute is still tolled because the plaintiff is still disabled.

The Second Circuit has recognized that the "insanity" tolling period provided in CPLR 208 applies to "individuals who are unable to protect their legal rights because of an over-all inability to function in society." *Carmichael v. Captain Hobbs Corr. Officer*, 371 Fed.Appx. 155 (2d Cir.2010), citing *McCarthy v. Volkswagen of America, Inc.*, 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982). However, Guardian argues that the statutory tolling provision cannot be relied on to alter the terms of the Plan—a contract between its sponsor and its employees—which expressly provides for a three year statute of limitations and neither contains nor incorporates any tolling provision. Citing cases from Circuits other than the Second Circuit, Guardian asks the court to ignore entirely Viti's request for an equitable toll. Plaintiff counters that the Second Circuit has endorsed the application of CPLR 208 in ERISA cases, citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir.2002)—although CPLR 208 was never mentioned in that case.

Plaintiff's argument about the applicability of CPLR 208 to this case is predicated on his contention that the statute of limitations must be borrowed from state law. ("Since we look at New York law to determine the applicable statute of limitation ....we also look to New York law for its rules permitting tolling," (Pl. Br. at 8.)) But I have already held that the statute of limitations in this case is not borrowed from state law—it is imposed by contract, as held by the Second Circuit in *Burke*. I thus conclude that CPLR 208 has no applicability to this case, and I reject plaintiff's argument that CPLR 208 has abated the entire period, from September 14, 2006 (when the claim accrued) to and including today, under its "insanity" tolling period.[5]

---

5. If CPLR 208 were applicable, plaintiff would have a tough row to hoe, because the standard for proving that the statutory toll applies is extraordinarily high:

New York State courts have defined "insanity" quite narrowly, holding that the term applies only to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of America, Inc.*, [55 N.Y.2d 543, 450 N.Y.S.2d 457] 435 N.E.2d 1072, 1075 (N.Y.1982). As the Court of Appeals noted, the legislative history of § 208 indicates that the New York State Legislature intended the toll of the statute to be "narrowly interpreted," and the legislature had specifically rejected the substitution of the phrase "mental illness" for "insanity." *McCarthy*, [450 N.Y.S.2d 457] 435 N.E.2d at 1074. The test for insanity therefore takes into account not only medical analysis, but also whether the plaintiff has been able to work and function, and whether the plaintiff has attempted to protect the plaintiff's legal rights. *Swartz v. Berkshire Life Ins. Co.*, 2000 WL 1448627, at *4 (S.D.N.Y. Sept. 28, 2000). "[A]pathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone have been held to be insufficient to invoke the tolling provisions of CPLR § 208." *Wenzel v. Nassau Cnty. Police Dep't*, 1995 WL 836056, at *4 (E.D.N.Y. Aug. 5, 1995) (citations omitted); *see also Swartz*, 2000 WL 1448627, at *5 ("Difficulty in functioning is not sufficient to establish insanity for the purposes of § 208;

*Falco v. Unum Provident Corporation,* 2007 WL 1014568 at *8, 2007 U.S. Dist. LEXIS 23739 at *28 (E.D.N.Y. Mar. 30, 2007) (CPLR's limitations and tolling provisions are not applicable to periods of limitations set forth in insurance contracts).

That does not, however, dispose of the issue of tolling the limitations period, because the non-statutory doctrine of equitable tolling has to be considered.

### (3) Equitable Tolling

 Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity. *See Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir.1996). To warrant equitable tolling, a petitioner must demonstrate " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)); *see also Diaz v. Kelly,* 515 F.3d 149, 153 (2d Cir.2008).

"[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his [or her] rights." *Zerilli–Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003) (internal quotation marks, alterations, and citations omitted). It may be appropriate "where a plaintiff's medical condition or mental impairment prevented [him or] her from proceeding in a timely fashion." *Id.* (citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of

the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he or she] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir.2002)).

Although plaintiff insists otherwise, the Second Circuit has never "squarely held that [equitable tolling] applies to time limits that are specified in [ERISA] plan provisions." *Chapman, supra,* 288 F.3d at 512 ("[W]e have never squarely held that [equitable tolling] applies to time limits that are specified in plan provisions.") Indeed, although identifying the question as "important," *Id.,* the Court of Appeals has passed up at least one opportunity after *Chapman* to resolve it, *see, Garcia Ramos v. 1199 Health Care Employees Pension Fund,* 413 F.3d 234, 237–238 (2d Cir.2005). The parties have not cited to any Second Circuit opinion that does so, and this court has not located one.

The Court of Appeals has recognized the viability of the doctrine in the analogous Social Security context, however. *See Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir.1991) ("We believe that equitable tolling of the 60–day statute of limitations of Section 405(g) may be warranted in cases where an SSI disability claimant fails to seek judicial review in a timely manner because of mental impairment.") The Second Circuit has also held that the time limit for seeking Equal Employment Opportunity counseling could be equitably tolled if plaintiff can demonstrate that he is "sufficiently mentally disabled to justify tolling of a limitation period." *See Boos v. Runyon,* 201 F.3d 178, 184 (2d Cir.2000).

rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability.") (Citation omitted). Because I conclude that CPLR 208 does not

apply to this case, I need not and do not reach any conclusions about whether the evidence presented by plaintiff meets this extremely exacting standard.

The distinction between those cases and this one is not inconsequential: the administrative remedies at issue in *Canales* and *Boos* are statutory in nature, while this case involves a purely private (albeit highly regulated) contract between an employer and employees who are private, not state, actors.

I believe that the Second Circuit, if forced to confront the issue, might well conclude that equitable tolling applies to time limits imposed by ERISA plans. In other contexts, the Circuit has been notably generous in permitting equitable tolling if the facts warrant it (although it has set a very high bar for the plaintiff to surmount in order to make out the requisite facts). A fair reading of *Chapman* certainly suggests that the Circuit would not be inclined to conclude, as courts in other circuits have, that the application of equitable tolling to a contractual limitations period "rewrites" the parties' contract. Various district courts in this Circuit have concluded a period for exhausting administrative remedies as set forth in a plan document can be equitably tolled. *See, e.g., Tiger v. AT & T Techs. Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532, 534 (E.D.N.Y. 1986); *see also Barnett v. International Business Machines Corp.,* 885 F.Supp. 581, 587–88 (S.D.N.Y.1995) ("A court may ... take equitable considerations into account when determining whether to dismiss a claim for failure to exhaust administrative remedies....").

I recognize that in *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76 (2d Cir.2009), the Circuit stated that a court "must [not] rewrite, under the guise of interpretation, a term of a contract when the term is clear and unambiguous." *Burke, supra,* 572 F.3d at 81. But equitable tolling no more "rewrites" contracts than it "rewrites" statutes of limitations; it suspends their oper-

ation as an equitable matter. True, equity ought to be careful about doing anything that alters the contractual obligations freely agreed to by contracting parties. But to state the obvious, an ERISA benefits plan is not a negotiated contract between two competent business persons. It is something created by the sponsoring employer and its terms are effectively imposed on unwitting parties by virtue of their accepting employment with that sponsoring employer. The significant difference between such a contract and an agreement whose terms were freely negotiated and agreed to by parties standing as equals might cause our Court of Appeals to view ERISA benefits contracts as more akin to legislatively imposed statutes of limitations than to commercial contract terms, and so to view the applicability of equitable tolling differently than did courts in the Sixth and Eighth Circuits; certain language in *Chapman* fairly suggests as much.

However, there is no need for this court to determine this knotty issue if the facts of this case do not demonstrate that plaintiff would be entitled to an equitable toll if the doctrine were in fact applicable. The record before this court permits me to make some determinations relevant to this question, but not all.

It is not easy for a plaintiff to establish that he is entitled to an equitable toll. The plaintiff bears the burden of demonstrating that he or she acted with "reasonable diligence" throughout the period she seeks to toll. *Chapman,* 288 F.3d at 512. "The question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific." *Boos,* 201 F.3d at 184 (citing *Canales,* 936 F.2d at 759.). "At a minimum, a petitioner must provide 'a particularized description of how [his or her] condition adversely

affected [his or her] capacity to function generally or in relationship to the pursuit of [his or her] rights[.]'" *Mulero v. Bridgeport Bd. Of Educ.*, 2008 WL 2185928 at *3 (D.Conn. May 22, 2008) (quoting *Boos*, 201 F.3d at 185). "If the claimant proves that [ ]he was incapacitated for any length of time ..., then the district court can determine whether, considering all of the circumstances of the case, equitable tolling is warranted.'" *Id.* (quoting *Canales*, 936 F.2d at 759). In other words, equitable tolling is not automatic, even if there was a period of incapacity.

 "Where a plaintiff suffers from a chronic mental illness, he must show that he was *actually impaired during the relevant time period.*" *Id.* (citing *Rios v. Mazzuca*, 78 Fed.Appx. 742, 744–45 (2d Cir.2003)) (emphasis added). "[C]ourts have repeatedly refused to apply equitable tolling where a plaintiff has evidenced an ability to pursue his or her legal rights during the relevant period." *Tsai v. The Rockefeller Univ.*, 2002 WL 237843, at *5, 2002 U.S. Dist. LEXIS 2552, at *14–*15 (S.D.N.Y. Feb. 15, 2002) (citing cases), *aff'd*, 46 Fed.Appx. 657 (2d Cir.2002).

It would not be equitable for the court to toll the entire period from September 14, 2006, (when the cause of action accrued) until April 5, 2010 (the date the lawsuit was finally brought), as plaintiff asks. The evidence submitted in support of the cross motions before the court does not demonstrate that Viti was entirely unable to protect his rights throughout that period. Indeed, the evidence demonstrates that Viti was engaged in protecting his rights during most of the three year period—he was just not doing so in this court.

Viti commenced filing his claim for disability benefits under his ERISA policy during the summer of 2006, submitting relevant medical information and numer-

ous tax and employment records in order to apply for benefits. When Guardian initially indicated that Viti's submission was lacking, additional responsive documents were submitted in a matter of weeks.

Shortly after Guardian indicated that it would not extend the deadline for Viti to file an administrative appeal from the decision denying his claim, Viti applied for Social Security disability benefits. He submitted his own signed statement to the Social Security Administration in support of the application to the Social Security Administration during the summer of 2007. The Administrative Law Judge who handled the SSDI claim thoroughly reviewed and assessed plaintiff's medical condition at the time his claim was pending (2007–2008). Although Viti was ultimately found to be unable to work because he was "unable to respond appropriately to work-related stress or changes in an ordinary routine" (Pl. Ex. 3, GL016.), being unable to work is not the same as being unable to protect one's rights. The Administrative Law Judge specifically found, after considering essentially the same medical evidence that has been submitted to this court, that Viti, "can understand, remember and carry out multi-step instructions of moderate complexity; adapt to change; and adjust to supervision; despite panic attacks." (*Id.*) This finding is utterly inconsistent with Viti's claim that he is so unable to function as to be entitled to equitable tolling of the contractual limitations period; a person who can do what the ALJ says Viti could do is not a person who is incapable of protecting his legal rights with reasonable diligence.

Finally, in 2009—after receiving the SSDI benefits for which he had applied—Viti retained an attorney to attempt to resurrect the claim for benefits that is the subject of this lawsuit. The attorney asked Guardian to reopen the matter in

October 2009. That request was denied on November 2, 2009. This lawsuit was filed five months later.

Given all these facts, which are undisputed and indisputable, Viti has not demonstrated that his mental illness created circumstances so extraordinary as to prevent him from protecting his legal rights throughout the applicable (i.e., contractual) limitations period (September 14, 2006 until September 14, 2009). The court does not doubt that Viti was and remains mentally ill, or that he is unable to work. But that is not the issue where equitable tolling is concerned. The issue is whether he was so utterly disabled as to be effectively incapable of protecting his rights. Where, as here, his rights were in fact being fought for, the argument that he could not protect his rights fails. This eviscerates Viti's contention that the entire period prior to April 2010 is subject to an equitable toll.

Viti relies on his successful application for Social Security disability benefits as evidence that he is entitled to a lengthy period of equitable tolling. That reliance is misplaced, for two reasons.

First and foremost, the very fact that Viti applied for benefits demonstrates that he was able, with the assistance of his wife and counsel, to pursue his legal rights— which is enough, in and of itself, to disentitle him to equitable tolling. It is well settled that if the plaintiff was actually taking steps to protect his rights, even if he was mentally ill (and I have no doubt that plaintiff suffered from mental illness throughout the last six years), he cannot receive any benefit from equitable tolling. *de los Santos v. Fingerson*, 1998 WL 740851 at *5 (S.D.N.Y. Oct. 23, 1998) (finding plaintiff's application for Workers Compensation benefits to be evidence of competence contradicting claim of insanity); *see also, Ferguson v. Aetna Life Ins. Co.*, 2000 WL 263698, at *5–6 (N.D.Ill.

Feb. 28, 2000) (declining to equitably toll an ERISA claim barred by a three-year contractual limitations period because, despite impaired judgment, the insured "was able to exercise his legal rights and duties in other contexts.").

Second, while the Administrative Law Judge concluded that Viti was "disabled" within the meaning of the Social Security Act beginning October 2005, the standard for receiving SSDI payments is not congruent with the standard for giving someone the benefit of an equitable estoppel. Nothing in the ALJ's findings suggests that plaintiff was so incapacitated as to be utterly unable to protect his interests. To the contrary, as set forth above, the ALJ's findings about Viti's abilities are utterly inconsistent with any such conclusion.

There is, however, some evidence tending to suggest that, at least in the early months of his illness, Viti's condition might have been more parlous. An affidavit by his wife describes Mr. Viti's behavior since he stopped working in October 2005. For the first eight months after Viti stopped working, Viti "stayed in bed [ ... ] or was curled up in a fetal position just rocking back and forth in the corner of his room and crying all the time." (Pl. Ex. 3, GL024.) Viti's wife or his children had to be with Viti at all times, and when Viti shaved or took a shower he stated that "he wanted to cut his face up." (*Id.*) Viti's wife further explains that after Viti stopped working in October 2005 she and her adult children were unable to run errands or travel with Viti anywhere more than fifteen to twenty minutes from their home. If Viti were out of the house for more than fifteen to twenty minutes, he would "start[ ] to panic" and behave erratically, bolt[ing] out of the car and ... running in traffic" if they were stuck and unable to move. (*Id.*)

My problem is that the first eight months after Viti stopped working ended in June 2006—before the three-year period for filing this lawsuit began to run (September 14, 2006), and well before the six month period when he failed to file an appeal from the denial of benefits (November 3, 2006 until May 3, 2007). The evidence does not clearly delineate dates and time periods (a deficiency noted above), so it is not clear for how long this situation persisted, or whether it persists to this day. I fail to see how evidence about Viti's condition during the earliest months of his illness speaks to his condition at the time when the limitations period began to run.

Also, to the extent that the testimony of Viti's wife demonstrates that Viti became housebound in and after October 2005, and was unable to perform household activities, or to take care of certain personal needs (*id.*, GL025.), it is not clear whether those disabilities rendered it impossible to communicate with plaintiff about his effort to obtain disability benefits, and for what periods. Obviously it was possible to communicate with Viti, at least at certain times, because beginning in 2007, Viti pursued disability benefits through SSDI, and eventually (in the autumn of 2009) made an attempt to re-open the long-closed ERISA matter with Guardian. Plaintiff fails to correlate his failures to act with an inability to do so during particular time periods. But that is his burden.

The only specific illustration Viti offers to show that his mental illness interfered with his ability to protect his legal rights is his wife's statement that, when, "He received the notice that his claim had been denied and instead of acting upon [sic], he hid it in a drawer." (Pl. Rply at 10.) The issue is whether this odd action demonstrates that Viti was incapable of protecting his rights during the months when the denial of benefits letter lay hidden in the drawer. The relevant period runs roughly from November 6, 2006 [6] through the unspecified date in "late May 2007" when Mrs. Viti found the letter.

If Viti could make out, with particularized evidence, facts showing that he was entitled to a temporary toll of the limitations period that lasted more than 205 days, then it is possible that this action might be timely, even under the three year contractual period.[7] And Viti might well have an argument for a limited tolling period. By November 2006, when he received the letter denying benefits from Guardian, Viti had made an effort to return to work, only to fail in that endeavor. Viti's wife's affidavit and Dr. Formento's treatment records do not specifically describe Viti's behavior from November 2006 to May 2007, but they are capable of being interpreted to suggest that Viti's agoraphobia, depression, and extreme anxiety continued throughout those months. Viti's hiding the letter in a drawer, not even telling his wife about it, is some evidence that Viti may not have been able to confront the reality of what had occurred and take the step he needed to take to protect himself. This particular piece of evidence corresponds to the statements by the claimant's attorneys in *Chapman v. ChoiceCare Long Island Term Disability Plan*, ("*Chapman I*"), 288 F.3d 506, 512

---

6. The denial of benefits letter was dated November 3, 2006. The presumption is that the letter was received three days after it was mailed. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 147 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Therefore, the period of any temporary toll would begin on or about November 5, 2006.

7. By saying this, I do not mean to suggest that I have pre-determined the underlying legal issue about whether equitable tolling can be applied to limitations periods in private contracts. I have not. In the absence of equitable tolling, this lawsuit is untimely and the case should be closed.

(2d Cir.2002), who testified about their inability to communicate with their client about whether he wanted to appeal from a benefits denial.

Obviously, once the letter was found, any excuse for inaction melts away—and, as summarized above, action was taken almost immediately thereafter. However, there is sufficient basis in the record before me for this court to order a hearing before a United States Magistrate Judge, who shall report to the court with a recommendation as to (1) whether there should be a temporary toll of the statute of limitations for all or some portion of the period beginning November 6, 2006 and ending with the discovery of the letter, and (2) if the answer to the first question is yes, on what date should the tolling period end. This is the procedure that was ordered by the Second Circuit in *Chapman*.

There is, of course, a second prong to the doctrine of equitable tolling: a plaintiff must act with reasonable diligence when he is in fact able to do so. On the record before this court, there is no evidence that the plaintiff was incapable of protecting his interests from and after the period when the letter was found. Once that occurred, all of the things that are outlined above occurred: Guardian was asked to waive the 180 period for filing an appeal and refused to do so; plaintiff applied for SSDI benefits and was awarded those benefits; plaintiff hired an attorney to try to resurrect the Guardian claim.

The fact that plaintiff (or his wife) did not hire an attorney sooner, or that they did not choose to deal with Guardian's denial of benefits until the autumn of 2009, suggests to this court that they did not act with reasonable diligence with regard to the commencement of this lawsuit. Plaintiff's moving papers suggest no reason why the Guardian issue could not have been brought to court during the 2007–2008 period while plaintiff was applying for his SSDI benefits. The description of plaintiff's condition does not suggest any particularized reason why he or someone acting on his behalf could not have commenced this lawsuit much, much sooner than they did—after all, they were pursuing his SSDI benefits. Even after they hired an attorney, time was wasted; plaintiff's attorney waited some five months before bringing this action after he received Guardian's response to his October 2009 letter seeking a hearing on Viti's belatedly filed appeal. It is well settled that lack of diligence by a plaintiff's attorney does not warrant any relief from the limitations period by way of an equitable toll. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir.1994).

In short, there is considerable evidence that plaintiff did not act with reasonable diligence with respect to Guardian's denial of benefits. I thus invite Magistrate Judge Dolinger to address an additional issue when he makes his report: whether any failure to act with reasonable diligence vis a vis Guardian at a time when Viti was asserting his rights as to other matters (specifically SSDI benefits) bars the application of equitable tolling entirely—even if plaintiff is able to establish fact that might otherwise entitle him to a six or seven month equitable toll.

The parties will have time to object to the learned Magistrate Judge's findings after he has filed his Report.

### (4) Equitable Tolling: Exhaustion of Administrative Remedies

As noted above, there is a second and wholly separate contractual limitations period of six months for filing an appeal from a decision denying a claim for benefits. Viti had from November 3, 2006 until May 3, 2007 to file his administrative appeal and he did not do so. This court is without jurisdiction to entertain this case—even if it was timely filed—unless the

plaintiff is entitled to an equitable toll of that six month limitations period. Plaintiff seeks such a toll. Guardian, understandably, insists that the court must dismiss the case due to plaintiff's failure to file a timely appeal, and so to exhaust his administrative remedies.

Obviously, the period within which plaintiff could have filed a timely administrative appeal is co-terminous with the period when the letter was hidden in the drawer. Shortly after the letter was found (and apparently after an attorney looked at the file and decided that the case was not worth pursuing), plaintiff (through his wife) attempted to file a belated administrative appeal; Guardian refused to accept a late appeal. Put otherwise, Guardian declined to give plaintiff the benefit of an equitable toll of the appellate limitations period. Guardian now insists that this case should be dismissed because plaintiff cannot equitably toll the six-month appellate period, regardless of his medical condition.

This argument presents (for this court, at least) a more conceptually difficult issue that whether the contractually-dictated time period for bringing a lawsuit can be tolled, and the parties have not briefed it exhaustively. However, this, too, is an issue I would rather not reach—and I will not have to reach it if we conclude that this lawsuit is timely. So if necessary, we will return to this question—hopefully with more fulsome and directed briefing—after Magistrate Judge Dolinger holds his hearing and issues his report.

**Guardian's Motion to Dismiss Viti's Third and Fourth Causes of Action is Granted.**

▇▇▇ Viti's Third and Fourth Causes of Action of the Complaint allege that Guardian has violated ERISA 29 U.S.C. 1132(c)(1)(B) by failing to provide "Viti's claims file and any documents guidelines, or protocols that may have been referred

to or considered in the adjudication of Mr. Viti's claim for benefits." (AC ¶ 49.) These two Causes of Action are identical, except that the Third Cause of Action seeks a court order requiring Guardian to furnish the documentation requested, and the Fourth Cause of Action seeks a court imposed sanctions against Guardian for its failure to turn over the documentation.

These claims, unlike the claims asserted in the First and Second Causes of Action, are not dependent on the filing of a Proof of Claim, so there is no statute of limitations issue to consider. Instead, Guardian moves to dismiss these claims on the ground that they have been brought against the wrong party—the claims administrator, not the plan administrator, as required by law. Guardian is correct.

On January 25, 2010, Viti's attorney wrote to Guardian and asked for "copies of any documents, guidelines, or protocols that may have been referred to or considered in the adjudication of Mr. Viti's claim for benefits." (Pl. Ex. 8.) 29 U.S.C. § 1132(c) authorizes an award of sanctions, in the form of statutory damages, against, "Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant beneficiary." Viti seeks the imposition of sanctions against Guardian for failing and refusing to provide copies of the requested documents. Viti also seeks a court order requiring Guardian to turn over the requested documentation pursuant to 29 U.S.C. § 1132(c).

▇▇▇ However, the word "administrator" in Section 1132(c) does not refer to Guardian. Guardian is the insurer and the claims administrator. Sanctions under 29 U.S.C. § 1132(c) can only be awarded against a party specifically designated as the Plan administrator—which under the Plan is not Guardian. An insurer like

Guardian "is not liable for statutory damages under 29 U.S.C. § 1132(c)(1) which by its terms imposes disclosure requirements solely on *plan administrators.*" *Krauss v. Oxford Health Plans, Inc.,* 418 F.Supp.2d 416, 434 (S.D.N.Y.2005) (Emphasis added); *see also Lee v. Burkhart,* 991 F.2d 1004, 1010 (2d Cir.1993); and *Weiss v. CIGNA Healthcare, Inc.,* 972 F.Supp. 748, 753 (S.D.N.Y.1997). "[T]he SPD disclosure obligation is placed on the person designated by ERISA as the 'administrator' of the plan, not every fiduciary.'" *Weiss,* 972 F.Supp. at 753 (citations omitted).

In *Lee v. Burkhart,* 991 F.2d 1004 (2d Cir.1993), the Second Circuit held that a third party administrator who was also the source of funding for the plan was not liable for failing to notify plan participants that the plan in question was self-funded. The *Lee* court stated that:

> ERISA undoubtedly requires that participants be told who has the financial obligation to fund the plans. But that obligation is placed on the person designated under ERISA as the "administrator" of the plan, not on every fiduciary. ERISA defines "administrator" as (i) "the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A)(i). Thus, unless the plan sponsor, in this case P & W, designates another party to provide the disclosure mandated by ERISA, the duty to make such disclosure is on the plan sponsor.

*Id.* at 1010.

The Plan document does not specifically designate anyone as the "administrator" and the plan sponsor is Sterling. (Def. Ex. A, GL267.) Accordingly, Viti's request for documentation from Guardian and for statutory damages against Guardian pursuant to 29 U.S.C. § 1132(c)(1)

lacks merit, and the Third and Fourth Causes of Action must be dismissed.

Additionally, even the plan administrator's failure to produce the types of documents that plaintiff's counsel requested does not subject the "administrator" to penalties under 29 U.S.C. § 1132(c)(1). *See* 29 U.S.C. § 1132(c)(1); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96 (2d Cir.2005). 29 U.S.C. § 1024(b)(4) provides in pertinent part that:

> The [ERISA plan] administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report ... or other instruments under which the plan is established or operated.

*Id.* In an analysis of the disclosure requirements the Second Circuit stated that "Congress intentionally fashioned § 104(b)(4) to limit the categories of documents that administrators must disclose on demand of plan participants." *Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein,* 107 F.3d 139, 147 (2d Cir.1997). The Second Circuit and lower courts in this district have held that the term "other instruments" as utilized in 29 U.S.C. § 1024 includes only "formal documents that govern the plan." *Board of Trustees,* 107 F.3d at 146; *see also Bilello v. JPMorgan Chase Retirement Plan,* 649 F.Supp.2d 142 (S.D.N.Y.2009). The types of documents that plaintiff sought are simply not the types of documents that any administrator can be sanctioned for failing to produce.

Viti offers no answer to either of Guardian's arguments. I thus conclude that it concedes their force.

The Third and Fourth Causes of Action are dismissed, with prejudice.

## CONCLUSION

For the reasons stated above, Guardian's motion for dismissal of the Third and Fourth Causes of Action is granted and Viti's motion for summary judgment in his favor on those counts is denied. The court will not enter a separate judgment or certify this ruling for interlocutory appeal; I make this clear to forestall any unnecessary applications.

All motions by both parties relating to the First and Second Causes of Action are denied without prejudice. The case is referred to The Hon. Michael Dolinger, who will conduct a hearing and report to the court on the question of equitable tolling, as described more fully in this opinion.

This constitutes the decision and order of the court. The Clerk is directed to remove the motions found at Docket # 28 and 34 from the court's open motions list.